14-1381-cv
*Sensational Smiles, LLC v. Jewel Mullen, Dr., et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: April 15, 2015                        Decided: July 17, 2015)

Docket No. 14-1381-cv

_____

SENSATIONAL SMILES, LLC, d/b/a SMILE BRIGHT

*Plaintiff-Appellant,*

LISA MARTINEZ,

*Plaintiff*

v.

JEWEL MULLEN, DR., in her official capacity as Commissioner of Public Health,
JEANNE P. SRATHEARN, DDS, in her official capacity as a Member of the
Connecticut Dental Commission, ELLIOT BERMAN, DDS, in his official capacity
as a Member of the Connecticut Dental Commission, LANCE E. BANWELL,
DDS, in his official capacity as a Member of the Connecticut Dental Commission,
PETER S. KATZ, DMD, in his official capacity as a Member of the Connecticut
Dental Commission, STEVEN G. REISS, DDS, in his official capacity as a Member
of the Connecticut Dental Commission, MARTIN UNGAR, DMD, in his official
capacity as a Member of the Connecticut Dental Commission, BARBARA B.
ULRICH, in her official capacity as a Member of the Connecticut Dental
Commission,

*Defendants-Appellees.*

_____

Before: CALABRESI, CABRANES, and DRONEY, *Circuit Judges*.

Plaintiff-appellant Sensational Smiles, LLC, d/b/a Smile Bright ("Sensational Smiles") appeals from a March 31, 2014 judgment of the United States District Court for the District of Connecticut (Micheal P. Shea, *Judge*) granting defendants' motion for summary judgment. Sensational Smiles is a company that provides teeth-whitening services that involve shining a low-powered LED light into a customer's mouth for 20 minutes. The Connecticut State Dental Commission has issued a declaratory ruling restricting the use of such lights to licenced dentists. Sensational Smiles now challenges that ruling, arguing that the ruling violates the Equal Protection Clause and the Due Process Clause because it lacks a rational basis. Because we conclude that there are several rational reasons for limiting the use of teeth-whitening LED lights to licenced dentists, we affirm.

Judge DRONEY concurs in a separate opinion.

_____

PAUL M. SHERMAN (Dana Berliner, *on the brief*), Institute for Justice, Arlington, VA, *for Plaintiff-Appellant*.

DANIEL SHAPIRO, Assistant Attorney General, *for* George Jepsen, Attorney General of Connecticut, *for Defendants-Appellees*.

2

GUIDO CALABRESI, *Circuit Judge*:

The question in this case is whether a Connecticut rule restricting the use of certain teeth-whitening procedures to licenced dentists is unconstitutional under the Due Process or Equal Protection Clauses. Because we conclude that there are any number of rational grounds for the rule, we affirm the judgment of the District Court.

## BACKGROUND

Under Connecticut law, the State Dental Commission ("the Commission") is charged with advising and assisting the Commissioner of Public Health in issuing dental regulations. *See* Conn. Gen. Stat. § 20-103a(a). On June 8, 2011, the Commission issued a declaratory ruling that only licensed dentists were permitted to provide certain teeth-whitening procedures. On July 11, 2011, the Connecticut State Department of Public Health sent Sensational Smiles—a non-dentist teeth-whitening business—a letter requesting that it "voluntarily" cease the practice of offering teeth- whitening services, and warning that it could otherwise face legal action.

Sensational Smiles sued, challenging several aspects of the

declaratory ruling. The parties before the District Court eventually agreed, however, that just one rule constrained the services offered by Sensational Smiles—specifically, the rule stating that only a licensed dentist could shine a light emitting diode ("LED") lamp at the mouth of a consumer during a teeth-whitening procedure.[1] Sensational Smiles asserted that this rule violates the Equal Protection and Due Process Clauses, because no rational relationship exists between the rule and the government's legitimate interest in the public's oral health. Accordingly, Sensational Smiles sought a declaratory judgment from the District Court that the rule was unconstitutional as applied, as well as a permanent injunction barring the rule's enforcement. The District Court (Michael P. Shea, *Judge*) rejected Sensational Smiles' arguments and granted defendants' motion for summary judgment. Sensational Smiles appealed.

## DISCUSSION

---

[1] According to Sensational Smiles, the LED light was used to "enhance" the teeth whitening process. See Appellant's Br. at 3-4 ("To enhance the whitening process, after the mouthpiece was inserted and the customer was reclined in the chair, a Smile Bright employee would then position a low-powered LED light that was attached to an adjustable arm in front of the customer's mouth. Then the customer would simply relax for 20 minutes and listen to music until the light automatically shut off, indicating the end of the whitening process.") (internal citations omitted).

4

We review the District Court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. *Delaney v. Bank of America Corporation et al.*, 766 F.3d 163, 167 (2d Cir. 2014).

The claims at issue—that the declaratory ruling violated the Constitution's Equal Protection and Due Process Clauses—are both subject to rational-basis review. *See Heller v. Doe*, 509 U.S. 312, 320 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate government purposes."); *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009) ("The law in this Circuit is clear that where, as here, a statute neither interferes with a fundamental right nor singles out a suspect classification, we will invalidate that statute on substantive due process grounds only when a plaintiff can demonstrate that there is no rational relationship between the legislation and a legitimate legislative purpose.") (citations, internal quotation marks, and brackets omitted).

As the Supreme Court has stated on multiple occasions, rational-basis review "is not a license for courts to judge the wisdom, fairness, or logic of

legislative choices." *Heller*, 509 U.S. at 319. Rather, we are required to uphold the classification "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 320 (internal quotation marks omitted). Accordingly, to prevail, the party challenging the classification must "negative every conceivable basis which might support it." *Id.* (citation and internal quotation marks omitted).

Reviewing the record de novo, we agree with the District Court that a rational basis, within the meaning of our constitutional law, existed for Connecticut's prohibition on non-dentists pointing LED lights into their customers' mouths. All sides agree that the protection of the public's oral health is a legitimate governmental interest. The parties, however, strongly dispute whether the rule at issue rationally relates to this interest. Here, the Commission received expert testimony indicating that potential health risks are associated with the use of LED lights to enhance the efficacy of teeth-whitening gels.[2] While

[2] The Commission heard from Dr. Jonathan C. Meiers, DMD, who testified about several scientific articles that appeared in dental journals and that discussed the safety of lights used for teeth whitening. In particular, he testified, and the Commission adopted as a finding of fact, that bleaching lights (though not specifically LED lights) can lead to an increased risk of pulpal irritation, tooth sensitivity, and lip burns. One article referenced by Dr. Meiers dealt specifically with LED lights, and noted that "Thermal pulp damage from LED-systems

6

Sensational Smiles disputes this evidence, it is not the role of the courts to second-guess the wisdom or logic of the State's decision to credit one form of disputed evidence over another.

Sensational Smiles argues that even if there was some basis for believing that LED lights could cause harm, there was still no rational basis for restricting the operation of LED lights to licensed dentists. This is so because dentists are not trained to use LED lights or to practice teeth whitening, and are not required to have any knowledge of LED lights in order to get dental licenses. The Commission, however, might have reasoned that if a teeth-whitening customer experienced sensitivity or burning from the light, then a dentist would be better equipped than a non-dentist to decide whether to modify or cease the use of the light, and/or to treat any oral health issues that might arise during the procedure. The Commission might also have rationally concluded that, in view of the health risks posed by LED lights, customers seeking to use them in a teeth-whitening procedure should first receive an individualized assessment of their oral health

cannot be absolutely excluded and has to be taken into consideration, especially when high power LED's are used for a longer time period." Wolfgang Buchalla & Thomas Attin, *External bleaching therapy with activation by heat, light or laser – a systematic review*, 23 DENTAL MATERIALS 586, 590-91 (2007).

by a dentist. Indeed, the Commission explicitly found that "[t]he decision of whether to recommend or apply bleaching agents and/or bleaching lights to a particular person's teeth requires significant diagnostic expertise and skills, in part, to allow the provider to distinguish between pathological versus non-pathological causes of tooth discoloration." App'x at 201. There were thus rational grounds for the Dental Commission to restrict the use of these lights to trained dentists.

Sensational Smiles further argues that the rule is irrational because it allows consumers to shine the LED light into their own mouths, after being instructed in its use by unlicensed teeth-whitening professionals, but prohibits those same teeth-whitening professionals from guiding or positioning the light themselves. The law, however, does not require perfect tailoring of economic regulations, and the Dental Commission can only define the practice of dentistry; it has limited control over what people choose to do to their own mouths. Moreover, and perhaps more importantly, individuals are often prohibited from doing to (or for) others what they are permitted to do to (or for) themselves. Thus, while one may not extract another's teeth for money without a dental license, individuals can remove their own teeth with pliers at home if they so

choose, and a failure to ban the latter practice would not render a ban on the former irrational. The same is true of legal services, where individuals may proceed pro se, but may not represent others without a law license.

In sum, given that at least *some* evidence exists that LED lights may cause *some* harm to consumers, and given that there is *some* relationship (however imperfect) between the Commission's rule and the harm it seeks to prevent, we conclude that the rule does not violate either due process or equal protection.

This would normally end our inquiry, but appellant, supported by amicus Professor Todd J. Zywicki , forcefully argues that the true purpose of the Commission's LED restriction is to protect the monopoly on dental services enjoyed by licensed dentists in the state of Connecticut. In other words, the regulation is nothing but naked economic protectionism: "rent seeking . . . designed to transfer wealth from consumers to a particular interest group."[3]

---

[3]In the field of public choice economics, "rent-seeking" means the attempt to increase one's share of existing wealth through political activity. See Anne O. Krueger, *The Political Economy of the Rent-Seeking Society*, 64 AM. ECON. REV. 291 (1974); Jagdish Bhagwati, *Directly Unproductive, Profit Seeking Activities*, 90 J. POL. ECON. 988 (1982); see *also Dist. Intown Properties Ltd. P'ship v. D.C.*, 198 F.3d 874, 885 (D.C. Cir. 1999) ("While the resulting proposals are naturally advanced in the name of the public good, many are surely driven by interest-group purposes, commonly known as "rent-seeking.'").

Zywicki Br. at 3. This raises a question of growing importance and also permits us to emphasize what we do not decide, namely, whether the regulation is valid under the antitrust laws. *See N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101 (2015) (holding that dental board was not sufficiently controlled by the state to claim state antitrust immunity).

In recent years, some courts of appeals have held that laws and regulations whose sole purpose is to shield a particular group from intrastate economic competition cannot survive rational basis review. *See St. Joseph Abbey v. Castille*, 712 F.3d 215, 222 (5th Cir. 2013) ("[N]either precedent nor broader principles suggest that mere economic protection of a particular industry is a legitimate governmental purpose[.]"); *Merrifield v. Lockyer*, 547 F.3d 978, 991, n.15 (9th Cir. 2008) ("[M]ere economic protectionism for the sake of economic protectionism is irrational with respect to determining if a classification survives rational basis review."); *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) ("[P]rotecting a discrete interest group from economic competition is not a legitimate governmental purpose."). The Tenth Circuit, on the other hand, has squarely held that such a protectionist purpose is legitimate. *See Powers v. Harris*, 379 F.3d 1208, 1221 (10th Cir. 2004) ("[A]bsent a violation of a specific constitutional

provision or other federal law, intrastate economic protectionism constitutes a legitimate state interest."). We join the Tenth Circuit and conclude that economic favoritism is rational for purposes of our review of state action under the Fourteenth Amendment.

Our decision is guided by precedent, principle, and practicalities. As an initial matter, we note that because the legislature need not articulate any reason for enacting its economic regulations, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Accordingly, even if, as appellants contend, the Commission was in fact motivated purely by rent-seeking, the rational reasons we have already discussed in support of the regulation would be enough to uphold it.

But even if the only conceivable reason for the LED restriction was to shield licensed dentists from competition, we would still be compelled by an unbroken line of precedent to approve the Commission's action. The simple truth is that the Supreme Court has long permitted state economic favoritism of all sorts, so long as that favoritism does not violate specific constitutional provisions or federal statutes. *See, e.g.*, *Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539

11

U.S. 103, 109 (2003) (upholding state tax scheme that favored riverboat gambling over racetrack gambling); *Nordlinger v. Hahn*, 505 U.S. 1, 12 (1992) (upholding state property tax scheme that favored long term owners over new owners); *New Orleans v. Dukes*, 427 U.S. 297 (1976) (upholding New Orleans city ordinance that banned street vendors, with an exception made for existing vendors in operation for more than eight years);*Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, (1955) (upholding regulation that prohibited "any person purporting to do eye examination or visual care to occupy space in [a] retail store").[4]

These decisions are a product of experience and common sense. Much of what states do is to favor certain groups over others on economic grounds. We call this politics. Whether the results are wise or terrible is not for us to say, as favoritism of this sort is certainly rational in the constitutional sense. To give but one example, Connecticut could well have concluded that higher costs for teeth whitening (the possible effect of the Commission's regulation) would subsidize lower costs for more essential dental services that only licensed dentists can

[4] At oral argument, appellant pointed us to the Supreme Court's decision in *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985), contending that it stands for the proposition that economic protectionism is not a legitimate government interest. Ward is inapposite, however, because it deals with economic discrimination based on out-of-state residence, not with purely intrastate economic regulation.

provide, such as oral surgery or tooth extraction–much as the high cost of a law or business degree at a given university may allow other students at the same university to pursue poetry on the (relatively) cheap. Even such an arguably consumer-friendly rationale is unnecessary, however, as a simple preference for dentists over teeth-whiteners would suffice. To hold otherwise would be to interpret the Fourteenth Amendment in a way that is destructive to federalism and to the power of the sovereign states to regulate their internal economic affairs.  As Justice Holmes wrote over a century ago, "[t]he 14th Amendment does not enact Mr. Herbert Spencer's Social Statics." *Lochner v. New York*, 198 U.S. 45, 75 (1905) (Holmes, J., dissenting).  Nor does it endorse Sidney and Beatrice Webb's Fabianism.  Choosing between competing economic theories is the work of state legislatures, not of federal courts.

We are buttressed in our decision by the difficulty in distinguishing between a protectionist purpose and a more "legitimate" public purpose in any particular case.  Often, the two will coexist, with no consistent way to determine acceptable levels of protectionism. *Cf.  N. Carolina State Bd. of Dental Examiners*, 135 S. Ct. at 1123 (Alito, J., dissenting).  And a court intent on sniffing out "improper" economic protectionism will have little difficulty in finding it.  Thus,

even the law at issue in *Lochner*—the paradigm of disfavored judicial review of economic regulations—might well fail the sort of rational basis scrutiny advocated by Sensational Smiles and its amicus. *See* Rebecca L. Brown, Constitutional Tragedies: The Dark Side of Judgment, in Constitutional Stupidities, Constitutional Tragedies 139, 142 (William N. Eskridge, Jr. & Sanford Levinson eds., 1998) ("[S]ubsequent analysts . . . . have demonstrated that the law at issue in *Lochner*, despite its guise as a health regulation, was probably a rent-seeking, competition-reducing measure supported by labor unions and large bakeries for the purpose of driving small bakeries and their large immigrant workforce out of business.").

Of course, if economic favoritism by the states violates federal law, then, like any state action that contravenes stated federal rules, it falls under the Supremacy Clause. This can happen if—whether motivated by rent-seeking or by libertarian ideals—state action, though rational, violates the dormant Commerce Clause, or if a state licensing board that is insufficiently controlled by the state creates a monopoly in violation of the Sherman Act. *See* 15 U.S.C. § 1 *et seq.*; *N. Carolina State Bd. of Dental Examiners*, 135 S. Ct. at 1114. Accordingly, we emphasize that we take no position on the applicability of the antitrust laws to

14

the regulation at issue here. That is a separate and distinct inquiry that was not argued and is not before us. All we hold today is that there are any number of constitutionally rational grounds for the Commission's rule, and that one of them is the favoring of licensed dentists at the expense of unlicensed teeth whiteners.

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

DRONEY, *Circuit Judge*, concurring in part and concurring in the judgment:

I join the majority opinion in its conclusion that the Dental Commission's declaratory ruling is rationally related to the state's legitimate interest in protecting the public health. Because this is sufficient to resolve the appeal, I would not reach the question of whether pure economic protectionism is a legitimate state interest for purposes of rational basis review. The majority having chosen to address that issue, I write separately to express my disagreement.

In my view, there must be at least some perceived public benefit for legislation or administrative rules to survive rational basis review under the Equal Protection and Due Process Clauses. As the majority acknowledges, only the Tenth Circuit has adopted the view that pure economic protectionism is a legitimate state interest. *See Powers v. Harris*, 379 F.3d 1208, 1221 (10th Cir. 2004). Two of the circuits that reached the opposite conclusion expressly rejected the Tenth Circuit's approach. *See St. Joseph Abbey v. Castille*, 712 F.3d 215, 222-23 (5th Cir. 2013); *Merrifield v. Lockyer*, 547 F.3d 978, 991 n.15 (9th Cir. 2008).

I agree with the Fifth Circuit's reasoning in *St. Joseph Abbey*, particularly insofar as it disputes the Tenth Circuit's reliance in *Powers* on the very Supreme

1

Court cases that the majority cites in support of its holding here. *See St. Joseph Abbey*, 712 F.3d at 222 ("[N]one of the Supreme Court cases *Powers* cites stands for that proposition [that intrastate economic protectionism is a legitimate state interest]. Rather, the cases indicate that protecting or favoring a particular intrastate industry is not an *illegitimate* interest when protection of the industry can be linked to advancement of the public interest or general welfare." (emphasis in original)); *see also Powers*, 379 F.3d at 1226 (Tymkovich, J., concurring) ("Contrary to the majority . . ., whenever courts have upheld legislation that might otherwise appear protectionist . . ., courts have always found that they could also rationally advance a *non-protectionist* public good." (emphasis in original)).

A review of the Supreme Court decisions confirms the Fifth Circuit's conclusion that some perceived public benefit was recognized by the Court in upholding state and local legislation. In *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955), the Supreme Court reviewed an Oklahoma statute that, *inter alia*, forbade opticians from replacing eyeglass lenses without a prescription from an optometrist or ophthalmologist, even when an optician could easily and safely have done the work. *See id.* at 485-87. In concluding that the legislation

2

passed rational basis review, the Court recognized that the requirement of a prescription could advance the public interest in an eye examination by a doctor before the lens replacement. *See id.* at 487-88.

In *City of New Orleans v. Dukes*, 427 U.S. 297 (1976) (per curiam), the Court reviewed a New Orleans ordinance that prohibited food venders from operating pushcarts in the French Quarter. *See id.* at 298. A grandfather clause exempted existing vendors from the ban if they had been operating continuously in the French Quarter for at least eight years. *See id.* The Supreme Court held that the exemption survived rational basis review, observing that New Orleans may have concluded that "newer businesses were less likely to have built up substantial reliance interests in continued operation" and that the grandfathered vendors may have "themselves become part of the distinctive character and charm" of the French Quarter. *Id.* at 305.

The two more recent decisions cited by the majority upheld differential rates of state taxation. *Nordlinger v. Hahn*, 505 U.S. 1 (1992), considered a California property tax regime that tied the assessment of property values to the value of the property at the time it was acquired, as opposed to its current value. *See id.* at 5. This approach benefitted long-term property owners over newer

owners. *See id.* at 6. However, the Court identified the state's "legitimate interest in local neighborhood preservation, continuity, and stability" and the "reliance interests" of existing property owners as rational bases for the law. *Id.* at 12-13.

In *Fitzgerald v. Racing Association of Central Iowa*, 539 U.S. 103 (2003), the Court reviewed an Iowa law that imposed higher taxes on racetrack slot machine revenues than it imposed on riverboat slot machine revenues. *See id.* at 105. Again finding the differential tax treatment rational, the Court suggested that the state legislature "may have wanted to encourage the economic development of river communities or to promote riverboat history." *Id.* at 109. And it again emphasized "reliance interests," observing that the law preserved the historical tax rate for riverboats, whereas racetracks had not previously been permitted to operate slot machines at all. *Id.* at 105, 109.

It may be that, as a practical matter, economic protectionism can be couched in terms of some sort of alternative, indisputably legitimate state interest. Indeed, the majority suggests as much when it observes that, in this case, the state may have concluded that protectionism "would subsidize lower costs for more essential dental services that only licensed dentists can provide." Maj. Op., *ante*, at 12. But it is quite different to say that protectionism *for its own*

4

*sake* is sufficient to survive rational basis review, and I do not think the Supreme Court would endorse that approach. *Accord Merrifield*, 547 F.3d at 991 n.15 ("We do not disagree that there might be instances when economic protectionism might be related to a legitimate governmental interest and survive rational basis review. However, economic protectionism for its own sake, regardless of its relation to the common good, cannot be said to be in furtherance of a legitimate governmental interest.").

Nor do I believe that rejecting pure economic protectionism as a legitimate state interest requires us to resurrect *Lochner*. *Accord St. Joseph Abbey*, 712 F.3d at 227 ("We deploy no economic theory of social statics or draw upon a judicial vision of free enterprise. . . . We insist only that Louisiana's regulation not be irrational—the outer-most limits of due process and equal protection—as Justice Harlan put it, the inquiry is whether '[the] measure bears a rational relation to a constitutionally permissible objective.' Answering that question is well within Article III's confines of judicial review." (second alteration in original) (footnote omitted)); *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002) ("We are not imposing our view of a well-functioning market on the people of Tennessee. Instead, we invalidate only the General Assembly's naked attempt to raise a

fortress protecting the monopoly rents that funeral directors extract from consumers. This measure to privilege certain businessmen over others at the expense of consumers is not animated by a legitimate governmental purpose and cannot survive even rational basis review."); *see also* Cass R. Sunstein, *Naked Preferences and the Constitution*, 84 Colum. L. Rev. 1689, 1692 (1984) ("The minimum requirement that government decisions be something other than a raw exercise of political power has been embodied in constitutional doctrine under the due process clause before, during, and after the *Lochner* era.").

The majority, by contrast, essentially renders rational basis review a nullity in the context of economic regulation. *See Powers*, 379 F.3d at 1226 (Tymkovich, J., concurring) ("The end result of the majority's reasoning is an almost per se rule upholding intrastate protectionist legislation."); *cf. Ranschburg v. Toan*, 709 F.2d 1207, 1211 (8th Cir. 1983) ("Although states may have great discretion in the area of social welfare, they do not have unbridled discretion. They must still explain why they chose to favor one group of recipients over another. Thus, it is untenable to suggest that a state's decision to favor one group of recipients over another by itself qualifies as a legitimate state interest. An intent to discriminate is not a legitimate state interest."). If even the deferential limits on state action

fall away simply because the regulation in question is economic, then it seems that we are not applying any review, but only disingenuously repeating a shibboleth. *Cf. Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012) ("[W]hile rational basis review is indulgent and respectful, it is not meant to be 'toothless.'" (citation omitted)), *aff'd*, 133 S. Ct. 2675 (2013).

I acknowledge that the deference afforded by courts to legislative enactments is significantly greater in the context of economic regulation than it is "in matters of personal liberty." *St. Joseph Abbey*, 712 F.3d at 221 (citing *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938)); *see also* Allison B. Kingsmill, Note, *Of Butchers, Bakers, and Casket Makers:* St. Joseph Abbey v. Castille *and the Fifth Circuit's Rejection of Pure Economic Protectionism as a Legitimate State Interest*, 75 La. L. Rev. 933, 936 (2015) ("The [Supreme] Court has not invalidated a single piece of economic legislation on due process or equal protection grounds since [the 1930s], opting for a more deferential, rational basis review of state laws."). But this difference in degree does not compel the conclusion that our deference in the economic sphere must be absolute. Nor will an insistence on some legitimate, non-protectionist state interest result in sweeping judicial entanglement in the legislative process.

For this reason, I am not troubled by the majority's surmise that "even the law at issue in *Lochner*—the paradigm of disfavored judicial review of economic regulations—might well fail the sort of rational basis scrutiny advocated by Sensational Smiles." Maj. Op., *ante*, at 13-14. First, I doubt that this would actually be the case; even if, as a matter of historical fact, the *Lochner* law was *intended* to be a protectionist measure, such intent is not dispositive of the rational basis inquiry. *See id.* at 10-11. And, in the highly unlikely event that the evidence showed that the law was entirely untethered to any conceivable legitimate state purpose (including protection of the public health), I do not see why the law should survive. *Lochner* is "the paradigm of disfavored judicial review of economic regulations" because it imposed exacting limits on state action, in stark contrast to the deferential standard applied under modern rational basis review. *See Lochner v. New York*, 198 U.S. 45, 59 (1905) ("There must be more than the mere fact of the possible existence of some small amount of unhealthiness to warrant legislative interference with liberty."). Our aversion to *Lochner*'s flawed approach is well founded, but we should not respond to that aversion by abandoning the minimum requirements of due process and equal protection.

In short, no matter how broadly we are to define the class of legitimate state interests, I cannot conclude that protectionism for its own sake is among them.