17-1017-cv
Winston v. City of Syracuse

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2017
No. 17-1017-cv

JACQUELINE WINSTON, individually and on behalf of all others
similarly situated,
*Plaintiff-Appellant*,

*v.*

CITY OF SYRACUSE, DEBORAH SOMERS, in her official capacity as the
Commissioner of Water,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of New York.
No. 16-cv-235 — Thomas J. McAvoy, *Judge*.

ARGUED: DECEMBER 14, 2017
DECIDED: APRIL 11, 2018

Before: PARKER, LYNCH, and DRONEY, *Circuit Judges*

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*) granting defendants' motion for judgment on the pleadings. Plaintiff is a residential tenant in the City of Syracuse, New York (the "City"), who filed a putative class action challenging the City's policy of denying tenants the opportunity to open water accounts in their own name and shutting off water service to tenants when landlords fail to pay water bills. We conclude that the City's policy of denying tenants the opportunity to open water accounts satisfies the requirements of the Equal Protection Clause of the Fourteenth Amendment. We also hold that the City's water shutoff policy violates the Due Process Clause and the Equal Protection Clause. Accordingly, we **AFFIRM IN PART** and **REVERSE IN PART** the judgment of the district court, and **REMAND** for further proceedings consistent with this opinion.

---

JOSHUA COTTER, Legal Services of Central New York, Syracuse, NY, *for Plaintiff-Appellant*.

AMANDA HARRINGTON, Assistant Corporation Counsel (Mary D'Agostino, Assistant Corporation Counsel, *on the brief*), *for* Kristen E. Smith, Corporation Counsel, Syracuse, NY, *for Defendants-Appellees.*

2

DRONEY, *Circuit Judge*:

Plaintiff Jacqueline Winston, a tenant in a multi-family building in the City of Syracuse, New York, filed this putative class action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of New York in February 2016. She alleged that the City and its Commissioner of Water Deborah Somers (collectively, the "City") violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment when (1) the City shut off her water service after her landlord failed to pay the water bill for the building, and when (2) the City denied her the opportunity to open a water account in her own name. Winston sought declaratory and injunctive relief against the City.

The City filed a motion for judgment on the pleadings, contending that Winston had not pleaded a constitutional violation. In response, Winston argued that the City's policies were not

3

rationally related to a legitimate government interest and therefore deprived Winston of her rights to due process and equal protection.

The district court (McAvoy, *J.*) granted the City's motion and entered judgment for the City. *Winston v. City of Syracuse*, 205 F. Supp. 3d 238 (N.D.N.Y. 2016). The district court concluded that the City has a rational basis for those water account and water service policies. As to the City's policy regarding tenants opening water accounts, the district court concluded that Winston could not show that the City lacked a rational basis to treat landlords and tenants differently. The court reached the same conclusion regarding the City's policy of shutting off water when a landlord is delinquent in paying the water bill. The court reasoned that the City could rationally terminate water service to a landlord's property because doing so would further the City's goal of collecting unpaid water bills.

We affirm in part and reverse in part the district court's judgment. The City has offered sufficient reasons for its policy of

4

refusing to allow tenants to open their own water accounts, and thus satisfies the rational basis test. However, we also conclude that the City's practice of terminating water service to tenants when a landlord fails to pay the water bill is not rationally related to a legitimate government interest. Accordingly, we remand to the district court for further proceedings.

**BACKGROUND**

We draw the facts from the allegations in the complaint, and assume those facts are true for this appeal granting a motion under Rule 12(c) of the Federal Rules of Civil Procedure. *See L-7 Designs, Inc. v. Old Navy, LLC.*, 647 F.3d 419, 422 (2d Cir. 2011).

Winston is a forty-year-old mother of two children who lives in a unit of a multi-family home in Syracuse, New York. In addition to her two children, she lives with her husband, her sister, and her sister's nine-year-old son. Winston is a long-time tenant of her current home, having lived there since 2005. During the years Winston has

5

lived at the property, the landlord has been responsible for paying the water bill for the building. At the time that she filed this action, Winston was current in paying her monthly rent of $600. The City is the sole supplier of water service within the City through its Department of Water.

The City's ordinances governing water service do not permit tenants such as Winston to open their own water accounts. Rather, the City provides water service only after "the *property owner* . . . makes application for a service to said property." Syracuse, N.Y., Code of Ordinances, Part M, § 16-11 (emphasis added). Once service is established, the City may shut off the water for a failure to pay the water bill. *Id.* § 16-53 ("If a bill remains unpaid for sixty (60) days from the date on the bill, the water may be turned off . . . ."). Prior to terminating water service, the City's ordinances require the City to provide a written notice regarding the shutoff to the landlord and occupants of the property. *Id.* § 16-108(b).

On January 19, 2016, Winston received such a notice on the door to her home, which "inform[ed] her that her water would be shut off if the water bill of $472.97 was not paid in full within thirty days." App. 11. After receiving the notice, Winston informed her landlord's maintenance person, who assured her that the landlord would pay the bill.

The notices that the City provides when contemplating a water shutoff—including the one given Winston—inform the occupants of the reasons for terminating water service, as well as the landlord and occupants' "right to request an impartial hearing" before an independent City hearing officer. App. 33; *see also* Syracuse, N.Y., Code of Ordinances, Part M, § 16-108(d) ("The hearing officer shall not be an employee of the department of water."). This hearing officer has "discretion to make decisions on a case by case basis," and "shall issue a written decision" that is "binding on the commissioner of water." Syracuse, N.Y., Code of Ordinances, Part M, § 16-108(d). The

7

City may not terminate water service until the hearing is completed and the hearing officer renders a decision. *Id.*

Once the City terminates water service, the City's municipal code strictly limits the circumstances under which the Department of Water may restore water service. First, the Department of Water may only restore water service "when the event which is the basis for the shut off no longer exists" and a $140 restoration of service fee is paid. *Id.* § 16-108(e)–(f). Second, the Code provides that "an occupant may pay the [landlord's] outstanding water bill . . . and any associated fees, including . . . the restoration of service fee," but notes that "[i]t shall then be the responsibility of the occupant to take any necessary action to recoup the payment from the owner of the property." *Id.* § 16-108(e).

Winston did not avail herself of the hearing procedure, and alleges that she relied on the maintenance person's assurances that the landlord would pay the water bill. However, her landlord did not

8

pay the bill, and on February 23, 2016, the City shut off the water service to the building that included Winston's unit. According to Winston's complaint, she immediately contacted the maintenance person, who again stated that the landlord would address the overdue bill. The following day, the family remained without water, and Winston called the City's water department to pay the landlord's outstanding water bill. In her complaint, she alleges that a City employee told her that the City would not be able to restore water service even if she paid the bill because Winston was not the property owner.[1]

On February 25, 2016—Winston and her family's third day without water service—she filed this class action lawsuit alleging that the City's policies violate the Due Process Clause and the Equal

---

[1] The Department of Water employee's response is inconsistent with the City's policy of permitting tenants to pay their landlords' bill, as reflected in the City's ordinances. *See* Syracuse, N.Y., Code of Ordinances, Part M, § 16-108(e). That inconsistency between the City's alleged practice and formal policy is immaterial to our resolution of this appeal.

Protection Clause of the Fourteenth Amendment both facially and as applied to her.[2] In her complaint, she noted that she and her family had faced many difficulties during their days without water service. These difficulties included "buy[ing] gallons of water from the store just . . . [to] cook, drink, brush . . . teeth, and wash up." App. 11. In addition, she alleges that the lack of water service posed special problems for Winston's nine-year old autistic daughter.

After Winston filed her lawsuit, the City answered her complaint and then moved for judgment on the pleadings. The district court granted the motion as to Winston's facial challenges, determining that Winston had failed to state a claim because the City's policies were rationally related to legitimate government purposes. The court also denied the motion as to Winston's as applied challenge and denied Winston's motion for class certification.

---

[2] Although not in the record, in its brief the City states that it restored water service to Winston's building the day after Winston filed the lawsuit. Appellees' Br. at 24 n.2.

Following the district court decision, Winston agreed to dismiss her as applied challenge. This appeal followed.

**DISCUSSION**

On appeal, Winston argues that the district court erred when it determined that she had not stated a claim for facial violations of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. Specifically, she first contends that no rational reasons exist to distinguish between landlords and tenants for purposes of establishing water accounts. Second, she asserts that the City cannot lawfully distinguish between the tenants of delinquent and non-delinquent landlords when providing water service. We address each of these points below. However, we first resolve one preliminary issue that this appeal presents regarding standing to pursue this action.[3]

---

[3] We do not address in this opinion whether Winston's claim is moot because the water service was restored. However, we are mindful that even though "neither party has raised the issue of mootness on appeal," mootness "is a jurisdictional question, [and thus] we must 'examine the issue *sua sponte* when it emerges from

# I.    Standing

The City contends that Winston lacks standing to challenge the water shutoff policy under the Due Process Clause because a plaintiff "must submit to the challenged policy" to have standing to contest the legality of a government policy. *Prayze FM v. FCC*, 214 F.3d 245, 251 (2d Cir. 2000) (internal quotation marks omitted). According to the City, Winston failed to meet that requirement when she did not follow the City's procedures for requesting a pre-termination hearing.

An exception to that standing doctrine exists "where a plaintiff makes a substantial showing that [submission to the policy] would have been futile." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d

---

the record.'" *Muhammad v. City of N.Y. Dep't of Corr.*, 126 F.3d 119, 122 (2d Cir. 1997) (quoting *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 82 (2d Cir. 1996)). Here, the record indicates that the City voluntarily suspended its allegedly illegal conduct when it restored Winston's water service. Because the City has not "claim[ed] that its voluntary compliance moots [the] case," we see no need to address that issue any further. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000). Should the City decide to later argue the case is moot, we note that it must "bear[] the formidable burden of showing that it is absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

Cir. 1997). We agree with Winston that challenging termination of her water service would have been futile. While the City's ordinances give the hearing officer "discretion," the ordinances do not permit a hearing officer to restore water service when the bill remains unpaid. At oral argument on appeal, after questioned on the futility issue, counsel for the City did not represent that the hearing officer may waive non-payment of the landlord's bill. *See Prayze FM*, 214 F.3d at 251 (relying in part on a waiver provision in the regulations applicable to the case to conclude that the plaintiff had not shown that applying for an FCC license would be futile).

Furthermore, the City's ordinances indicate that water service would not be restored in these circumstances. Section 16-108(e) provides that an occupant may pay the landlord's water bill to retain water service when the landlord is delinquent. *See* Syracuse, N.Y., Code of Ordinances, Part M, § 16-108(e). That same section also states the tenant must pay the "restoration of service fee." *Id.* The City's

ordinances also prohibit restoring water service when a water bill remains unpaid: the Code provides that the Water Department may not restore water service until "the basis for the shut off no longer exists," indicating that City officials do not have discretion to disregard actual violations of the City's Code, such as a failure to pay a water bill. *Id.* § 16-108(f).

As a result, we conclude that under these circumstances Winston did not need to submit to the City's hearing procedures, as she would not have prevailed without paying the water bill. Accordingly, Winston has standing to bring her due process challenge to the City's water service termination policy.

**II.    The City's Water Account Policy**

We now turn to the merits of Winston's appeal. "We review *de novo* a district court's denial of a motion for judgment on the pleadings ." *Kass v. City of New York*, 864 F.3d 200, 205 (2d Cir. 2017). In doing so, "[w]e apply the same standard as that applicable to a

14

motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Id.* at 206. Here, we apply these standards to Winston's facial challenges to both the City's policy of denying tenants the opportunity to open water accounts and its policy of terminating water service to rental properties when landlords fail to pay their water bills. "A facial challenge is an attack on a statute [or policy] itself as opposed to a particular application." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015). The Supreme Court has recognized that a plaintiff may bring a facial challenge under the Fourteenth Amendment, as Winston does here. *See id*. (citing *Chicago v. Morales*, 527 U.S. 41 (1999)). It is well established that "[a] facial challenge will only succeed if there is no set of circumstances under which the challenged practices would be constitutional." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 347 (2d Cir. 1998).

We first address the City's policy of allowing only landlords to open water accounts. *See* Syracuse, N.Y., Code of Ordinances, Part M, § 16-11. In her complaint Winston asserted that this policy violates the Equal Protection Clause because no rational basis exists to treat property owners and tenants differently in that respect. We reject this argument and affirm the district court's decision to dismiss Winston's equal protection claim with respect to the City's policy of not permitting tenants to open water accounts.

The Equal Protection Clause of the Fourteenth Amendment "embodies a general rule that States must treat like cases alike, but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Whether a state law or policy satisfies this general principle, and what sort of review a court must apply, depends on the nature of the class of individuals the state or local government treats differently or the rights at issue. "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification

16

so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *see also Heller v. Doe*, 509 U.S. 312, 320 (1993) ("[A] classification [not involving a suspect class or fundamental right] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").

Here, we apply rational basis review because the City has neither targeted a suspect class nor has Winston argued that opening a water account is a fundamental right. This form of review is highly deferential. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993). "Rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller*, 509 U.S. at 319 (internal quotation marks omitted); *see also Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015). Moreover, "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller*, 509 U.S. at

320. Rather, "[a] statute is presumed constitutional," *id.*, and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973).

Rational basis review, however, does require some scrutiny of state and local government activity. "[W]hile rational basis review is indulgent and respectful, it is not meant to be 'toothless.'" *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012) (quoting *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981)), *aff'd*, 570 U.S. 744 (2013). Instead, rational basis review "imposes a requirement of some rationality in the nature of the class singled out." *Rinaldi v. Yeager*, 384 U.S. 305, 308–09 (1966).

Winston cannot meet her heavy burden "to negative every conceivable basis which might support" the City's policy of allowing only landlords to open water accounts. *Lehnhausen*, 410 U.S. at 364. Even if we draw all reasonable inferences in Winston's favor, she does

not plausibly allege facts that would overcome the policy rationales that the City offers. *See Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007).[4]

The City's policy for opening water accounts treats two classes of individuals differently: landlords and tenants. Winston argues that landlords and tenants are similarly situated because they each seek water service from the City. The district court agreed with Winston in this respect. *Winston*, 205 F. Supp. 3d at 247. The City, however, offers at least two rationales that Winston fails to "negative" for this different treatment of the two classes. *Lehnhausen*, 410 U.S. at 364.[5]

---

[4] In most cases involving rational basis review of an alleged equal protection violation, we review the matter after summary judgment. *See, e.g.*, *Sensational Smiles*, 793 F.3d at 284; *Windsor*, 699 F.3d at 176. However, a court may dismiss for failure to state a claim or grant judgment on the pleadings in a case alleging an equal protection violation if the plaintiff fails to plausibly allege that the state or local government policy lacks any rational basis. *See Hayden v. Paterson*, 594 F.3d 150, 169–71 (2d Cir. 2010) (affirming judgment on pleadings for equal protection claim regarding right to vote); *cf. Beach Commc'ns*, 508 U.S. at 315 ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.").

[5] The City and Winston also dispute other possible rationales for the water account policy, but we address only those necessary to resolve this claim.

First, the City argues that the "transitory nature of tenants" justifies the City's water account policy. Appellee's Br. at 27. Relatedly, the City contends that permitting only property owners to open water accounts allows the City to ensure it can collect on unpaid water bills by placing a lien on the property. In contrast, no such remedy would exist against tenants. Second, the City points out that separate water accounts are "impossible" in "multi-unit dwellings," where "water is supplied by a single pipe and measured by a single meter." *Id.* at 28.

The City's proffered rationales satisfy the rational basis test, because there is a "reasonably conceivable state of facts that could provide a rational basis for the classification" of property owners and tenants. *Beach Commc'ns*, 508 U.S. at 313. Winston's complaint does not plausibly allege otherwise.

Winston disputes the City's bases for distinguishing between landlords and tenants, arguing that (1) the City could improve its collection of unpaid water bills by allowing more individuals to open

water accounts, (2) the City could suspend water service to tenants if tenants had water accounts, and (3) it is feasible for the City to provide separate meters in multi-dwelling units. Winston's arguments merely quarrel with the wisdom of the City's policy, however, and do not demonstrate that the City lacks a *rational* basis to treat landlords and tenants differently. Winston may think that "there is an imperfect fit between means and ends" in achieving the City's goal of collecting money from water account holders, but we "are compelled under rational-basis review to accept . . . [those] generalizations." *Heller*, 509 U.S. at 321. Here, the City rationally concluded that property ownership allows it to collect its unpaid bills more efficiently because the City can subject property owners, but not tenants, to liens. Moreover, the City may rationally conclude that water supply infrastructure in older, multi-dwelling buildings provides a valid reason to allow only property owners to open water accounts. Concluding otherwise could essentially require substantial

21

reconstruction of apartment buildings throughout the City of Syracuse.

We therefore affirm the district court's conclusion that Winston failed to allege facts that might demonstrate the City has no rational basis to permit only property owners to open water accounts.

**III.    The City's Water Service Termination Policy**

We reach a different conclusion with respect to the City's policy of terminating water service to tenants whose landlords fail to pay their water bills. With respect to this policy, Winston alleges that the City violated both the Equal Protection and Due Process Clauses of the Fourteenth Amendment. We address each in turn, beginning with the Equal Protection claim.

    a.  Equal Protection Claim

We start by defining the classes at issue. In her complaint, Winston alleges that the City "creates two classes of tenant water users—tenants whose landlords have delinquent water bills and

22

tenants whose landlords are current in their payments." App. 12. The City has not challenged this definition of the classes, and for good reason: the City's own ordinances appear to encourage the collection of unpaid water bills from tenants whose landlords are delinquent in paying and permit water shutoffs to those same tenants. *See* Syracuse, N.Y., Code of Ordinances, Part M, §§ 16-53, 16-108(e). Thus, Winston plausibly alleges that that the City's ordinances and practices create these two different classes of tenants and that the City treats these classes differently.

The question, then, is whether there "is any reasonably conceivable state of facts that could provide a rational basis for [that] classification." *Beach Commc'ns*, 508 U.S. at 313.[6] Put another way, we must ask whether there is a "rational relationship between the disparity of treatment and some legitimate governmental purpose."

---

[6] Winston does not argue that water service is a "fundamental right." We therefore assume for the purposes of this appeal that only rational basis review applies. *See Romer*, 517 U.S. at 631.

*Heller*, 509 U.S. at 320. In answering this question, we have considerable guidance. Other circuits have addressed similar circumstances in decisions that date back to the 1970s. The Fifth Circuit first addressed these issues in *Davis v. Weir*, 497 F.2d 139 (5th Cir. 1974). The situation in *Davis* was very similar to this case. The plaintiff-tenant, Davis, was "current in his rental payments" to his landlord, but because of defective plumbing, there was "an exorbitant waste of water and Davis'[s] landlord . . . had refused to pay the water bill." *Davis*, 497 F.2d at 141. As a result, the City of Atlanta shut off Davis's water service, and "declined to restore service until the bill was paid." *Id.* To resolve that problem, Davis and other tenants attempted to open water service accounts directly with the City of Atlanta, but the city denied their applications because of the pre-existing balances on the landlord's water account. *Id.* at 142. Davis then filed a lawsuit in federal court raising due process and equal protection claims, just as Winston does here. *Id.*

24

The district court enjoined Atlanta's practices, and the Fifth Circuit affirmed. On appeal, the City of Atlanta argued that "the practice of rejecting water service applications until all accrued debts at the premises have been extinguished facilitates collection of unpaid bills at multi-unit dwellings and preserves the City's municipal revenue bond rating." *Id.* at 144. The Fifth Circuit nevertheless held that the policy failed even rational basis review:

> A collection scheme . . . that divorces itself entirely from the reality of legal accountability for the debt involved[] is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor. The City has no valid governmental interest in securing revenue from innocent applicants who are forced to honor the obligations of another or face constructive eviction from their homes for lack of an essential to existence—water. The fact that a third-party may be financially responsible for water service provided under a prior contract is an irrational, unreasonable and quite irrelevant basis upon which to distinguish between otherwise eligible applicants for water service.

*Id.* at 144–45 (footnote and internal quotation marks omitted).

25

Since *Davis*, three other Courts of Appeals have reached similar conclusions. First, in *Craft v. Memphis Light, Gas & Water Division*, the Sixth Circuit addressed a publicly-owned utility company's practice of refusing water service to new tenants of residences when prior tenants left unpaid bills. 534 F.2d 684, 689–90 (6th Cir. 1976), *aff'd on other grounds*, 436 U.S. 1 (1978). Relying on *Davis*, the Sixth Circuit held that the plaintiffs had established a valid equal protection claim. *Id.* at 690; *see also Golden v. City of Columbus*, 404 F.3d 950, 961–62 (6th Cir. 2005) (reaffirming *Craft* on facts nearly identical to Winston's case (where a landlord fails to pay the water bill) and holding that "terminating a tenant's water service is [not] a rational means of collecting the landlord's water service debt" because the "person directly penalized by the [shutoff] scheme is not the debtor but an innocent third party with whom the debtor contracted").[7] In *Sterling*

[7] In *Craft*, the defendant utility claimed that the tenants in that lawsuit could not state a claim because there was no state action. 534 F.2d at 687. The court rejected this argument because the utility was "municipally owned and controlled." *Id.*

26

*v. Village of Maywood*, 579 F.2d 1350 (7th Cir. 1978), the Seventh Circuit also found an equal protection violation in a similar situation. In that case, the town's water department refused water service to the tenant-plaintiff because of overdue water bills from either a prior tenant or the landlord. 579 F.2d at 1352. The Seventh Circuit joined the Fifth and Sixth Circuits, pointing to the language quoted above from *Davis. Id.* at 1355.

Nearly two decades later, the Ninth Circuit also joined those Courts of Appeals. *See O'Neal v. City of Seattle*, 66 F.3d 1064 (9th Cir. 1995). Similar to *Craft*, the Ninth Circuit appeal concerned "whether the City of Seattle's refusal to provide water service to the new tenant of a residence based on a prior tenant's unpaid water bill is constitutionally permissible." *Id.* at 1065. The Ninth Circuit rejected an intervening Third Circuit case (which we discuss further below)

Here, the City has not raised the issue of state action, as the City operates the water system.

27

and held that "[r]efusing a new tenant water service because of the debt of an unrelated prior tenant is illogical" and violates the Equal Protection Clause. *Id.* at 1068.

We agree with the Fifth, Sixth, Seventh, and Ninth Circuits that requiring a tenant without any legal obligation for a landlord's unpaid bill to pay that bill to retain or restore water service fails rational basis review. The tenants of non-delinquent and delinquent landlords are similar in all relevant respects in this situation. First, they rent their homes and cannot open water accounts in their own name. Syracuse, N.Y., Code of Ordinances, Part M, § 16-11. Second, their landlords have the legal obligation to pay the water bills to the City; neither class of current tenants possesses a *legal* obligation to pay the unpaid water bill. As a result, the City's policy of shutting off water to collect debts "divorces itself entirely from the reality of legal accountability for the debt involved," *Davis*, 497 F.2d at 144, and

28

"penalize[s] . . . not the debtor but an innocent third party with whom the debtor contracted." *Golden*, 404 F.3d at 962.

The City argues that this case is distinguishable from those of the other circuits and points to the Third Circuit's ruling in *Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir. 1988), which rejected *Davis*, *Craft*, and *Sterling*. Specifically, the City suggests four arguments to justify treating tenants of delinquent and non-delinquent landlords differently.

First, the City argues that the water service termination policy is justified because "a municipality has an important interest in ensuring the financial soundness of its utility system . . . by the collection of unpaid utility bills." Appellee's Br. at 14. In the City's view, this "legitimate interest" allows it to ignore the absence of a tenant's legal responsibility when seeking to collect a landlord's water bill payment from a tenant.

In making that argument, the City points to the *Ransom* decision. *Ransom* concerned Philadelphia's practice of denying water service to "non-tenant occupants" of a dwelling when there was an outstanding water bill from a prior tenant or owner.[8] 848 F.2d at 403, 411. In *Ransom*, the Third Circuit concluded that *Davis*'s holding "unnecessarily restricts the characterization of the city's interest as not merely the collection of unpaid [payments], but the collection of those [payments] 'from the defaulting debtor.'" *Id.* at 413 (quoting *Davis*, 497 F.3d at 145). The court then reasoned that "[t]he city has a valid interest in collecting unpaid [payments] from *any source*," and that there is a "logical relation between . . . a scheme [that encumbers

---

[8] In *Ransom*, the court did not view the plaintiffs as "tenants" because of their unique circumstances. 848 F.2d at 401 n.1. However, as the Ninth Circuit observed when discussing *Ransom*, the Third Circuit "did include non-owner occupants in its discussion," making its discussion of this issue relevant to Winston's appeal. *O'Neal*, 66 F.3d at 1067 n.3. Moreover, we agree with the Ninth Circuit that "the [*Ransom*] court distinguished *Davis* and its progeny, the landlord-tenant cases, on their merits." *Id.* As result, even though "the *Ransom* court may have intended to limit the scope of its opinion, its substantive discussion of the landlord-tenant cases is, at a minimum, instructive." *Id.*

30

a tenant's residence and prevents water service] and the more general goal of collecting debts, period." *Id* (emphasis added)*.* It then concluded that the means Philadelphia adopted were in fact legitimate under its broader definition of the interest at stake, explicitly rejecting *Davis*. *Id*.

That rationale is unconvincing, and we decline to adopt it here. *Ransom* cited no authority for its conclusion that a state or local government entity can collect money owed to it "from any source," regardless of legal obligation. *Id.* We therefore agree with the Ninth Circuit that "[p]roclaiming a goal of collecting the debt from anyone willing to pay does not give the City license to pursue payment by refusing water service to an unrelated, unobligated third party." *O'Neal*, 66 F.3d at 1068. The City may not separate its debt collection scheme from the actual legal obligation for the unpaid water bills. *See, e.g.*, *Davis*, 497 F.3d at 145 ("The City [of Atlanta] has no valid governmental interest in securing revenue from innocent applicants

who are forced to honor the obligations of another or face constructive eviction from their homes for lack of an essential to existence—water.").

The City's second argument is that *Davis* and the cases that follow it are factually distinguishable. Specifically, the City contends that Winston "cannot claim 'innocent third party' . . . status with regards to her landlord's water service arrears" because she "has lived at the property in question for over ten years, and thus presumably lived on the premises when the arrears accrued." Appellee's Br. at 24 (quoting *Brown v. City of Barre*, 878 F. Supp. 2d 469, 498 (D. Vt. 2012)). In its decision below, the district court agreed with that reasoning, holding that the City rationally concluded that it could suspend water service to *current* tenants because they used the water—and, as a result, increased the amount that their landlords

owed to the City. *Winston*, 205 F. Supp. 3d at 248–49. At least one other district court in our Circuit has also adopted that view.[9]

We conclude that that argument is also unavailing. The argument does not distinguish this case from the situation in *Davis*, where the plaintiff "was current in his rental payments," and Atlanta "terminated his water service" because the plaintiff's "landlord . . . refused to pay the water bill." *Davis*, 497 F.2d at 141. In both *Davis* and this case, the plaintiffs were current tenants who may have contributed to the water usage resulting in the landlord's unpaid water bill. However, even if this did distinguish Winston's allegations in her complaint from some other cases, it would not change our result. As we discussed above, the City cannot rationally compel tenants to pay their landlord's bills, because the tenants have no legal

---

[9] *See Brown*, 878 F. Supp. 2d at 502 ("As the City has pointed out, however, the instant case is one in which neither Plaintiffs nor class members can claim 'innocent' or 'unrelated' status vis-a-vis their landlord's water service arrearages. They thus possess an undeniable relationship to the debt the City seeks to collect.").

obligation to pay those bills. Their prior use of water does not change the fact that only the landlord is contractually obligated to the City to pay the water bills. Absent a change in the City's policy to allow tenants to open water accounts, that fact will not change—and the City's alleged water service termination policy will fail rational basis review under the Equal Protection Clause.[10]

Third, the City argues—and the district court agreed—that it can rationally distinguish between tenants with delinquent landlords and tenants with non-delinquent landlords because of the delinquent landlords' non-payment. *See Winston*, 205 F. Supp. 3d at 248 ("The two alleged classes are differentiated by the non-payment for water services by landlords in one class, and the payment for such services

---

[10] For similar reasons, none of the facts in the other Court of Appeals decisions that we discussed above provide a reason to depart from their equal protection analysis. In *Craft*, *Sterling*, and *O'Neal*, the municipal utilities refused water service because of a *prior tenant's* unpaid water bills. As we have discussed, that factual difference does not address the problem with the municipal utility's practice of collecting a *landlord's* unpaid debt from a tenant who has no legal obligation for that debt.

34

by landlords in the other."); *see also Brown*, 878 F. Supp. 2d at 499–500 (relying on similar reason to find no equal protection violation).

That argument fails for substantially the same reasons. Neither class of tenants possesses a legal obligation to pay their landlord's unpaid bills. The fact of the landlord's non-payment is irrelevant, because the City cannot force an individual without a legal obligation to pay the bill of another. As a result, the City cannot point to the landlord's non-payment to satisfy rational-basis review under the Equal Protection Clause.

Finally, the City seems to argue that the same reasons that justify treating landlords and tenants differently for opening water accounts also justify the practice of collecting money from tenants for their landlords' water bills. But that argument is not responsive to Winston's allegation that the City lacks a rational basis to treat the tenants of delinquent and non-delinquent landlords differently. As we discussed above, the difference between landlords and tenants is

35

relevant for the City's policy regarding who may open a water account. However, those differences are not the same for the water service termination policy, where the City must provide a reason for treating the two classes of *tenants* differently. Because those arguments are non-responsive, we decline to discuss them here.

We conclude that Winston has stated a plausible claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment. We turn next to Winston's allegation that that same policy violates the Due Process Clause of the Fourteenth Amendment.

b. <u>Due Process Claim</u>

We also reverse as to Winston's due process claim against the City's termination of water service policy. To establish a substantive due process violation, a plaintiff must show both (1) that she has an interest protected by the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not rationally related to a legitimate government interest. *See, e.g., Lange-Kessler v. Dep't of*

36

*Educ. of the State of N.Y.*, 109 F.3d 137, 140 (2d Cir. 1997); *see also*

*Sensational Smiles*, 793 F.3d at 284.[11]

We conclude that Winston also plausibly alleges a violation of substantive due process. The City does not contest that Winston has

---

[11] The City contends that "[s]ubstantive due process is 'violated only by conduct that is so *outrageously* arbitrary as to constitute a gross abuse of governmental authority.'" Appellee's Br. at 14 (emphasis added) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001)). We acknowledge that there is some tension in our prior decisions about whether a plaintiff seeking injunctive or declaratory relief in a substantive due process challenge must show that the defendants' policy is "arbitrary" or "outrageous," *see, e.g.*, *Harlen Assocs.*, 273 F.3d at 505, or whether the plaintiff must only show the defendant cannot satisfy rational basis review, *see, e.g.*, *Sensational Smiles*, 793 F.3d at 284; *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009). Here, we apply rational basis review, consistent with prior decisions in our Circuit and the Supreme Court that analyze facial challenges regarding whether a governmental entity has a proper justification for a statute or regulation. *See Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489–90 (1955) (upholding regulation governing sale of eyeglass frames because the state provided a rational justification for the regulation); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (noting differences between challenges to legislation and lawsuits seeking liability against individual executive officer actions based on substantive due process claims); *see also Sensational Smiles*, 793 F.3d at 284 (applying rational basis review to regulation permitting only dentists to provide certain teeth-whitening procedures); *Molinari*, 564 F.3d at 606 (applying rational basis review to challenge regarding New York City's law on term limits for certain city officials); *Maloney v. Cuomo*, 554 F.3d 56, 59–60 (2d Cir. 2009) (per curiam) (applying rational basis review to New York City's ban on possessing a particular weapon in the home), *vacated and remanded*, 561 U.S. 1040 (2010); *Lange-Kessler*, 109 F.3d at 140 (applying rational basis to law regulating the practice of midwifery).

37

a valid property interest in continued water service.[12] As to whether the City's policy satisfies rational-basis review, we conclude that Winston plausibly alleges a due process violation. Winston asserts that the City is seeking to collect payment on landlords' bills by requiring tenants who have no legal obligation for those bills to pay their landlords' accounts. As we have discussed, such a policy scheme, which is not based in legal accountability for the debt, fails rational-basis review. Accordingly, we also reverse the district court's dismissal of Winston's alleged Due Process Clause violation.

---

[12] In *Golden*, the Sixth Circuit concluded that tenants do not have a property interest in continued utility service because they lack a contractual relation with the utility. 404 F.3d at 955–58. Other circuits have found that a tenant has a property interest under landlord-tenant law to "bring an action to enjoin her landlord from constructively evicting her by terminating water service or declining to pay for it." *Id.* at 957 (citing *DiMassimo v. City of Clearwater*, 805 F.2d 1536, 1539 (11th Cir. 1986) and *Turpen v. City of Corvallis*, 26 F.3d 978, 979 (9th Cir.), *cert. denied*, 513 U.S. 963 (1994)). In addition, the Third Circuit has concluded that a property interest exists once a municipality "establishes a utility for its citizens." *Ransom*, 848 F.2d at 412. We need not resolve the issue here because the City does not dispute that Winston has such a property interest.

**CONCLUSION**

For the foregoing reasons, we conclude that Winston did not plausibly allege a violation of the Equal Protection Clause as to the City's policy for opening water accounts. We also conclude that the district court erred in dismissing Winston's equal protection and substantive due process challenges to the City's water termination policy. Accordingly, we **AFFIRM IN PART** and **REVERSE IN PART** the judgment of the district court, and **REMAND** for further proceedings consistent with this opinion. On remand, the district court should also afford Winston an opportunity to renew her motion for class certification in light of the decision in this appeal.