20-2744-cv
*Hartford Courant Co. v. Carroll, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2020

(Argued:  December 16, 2020    Decided: February 1, 2021)

Docket No. 20-2744-cv

HARTFORD COURANT COMPANY, LLC,

*Plaintiff-Appellee*,

*v.*

PATRICK L. CARROLL, III, in his Official Capacity as Chief Court Administrator of the Connecticut Superior Court, ANN-MARGARET ARCHER, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, KAREN A. BERRIS, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, ROBERT BURKE, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, ANTONIO D'ADDEO, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, RALPH DAGOSTINE, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, CYNTHIA DEGOURSEY, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, JILL DRISCOLL, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior

Court, CAROLINE FARGEORGE, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, DAVID S. GAGE, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, ERIC R. GROODY, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, LISA C. GROODY, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, TAMMY FLUET, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, RICHARD L. HAAS, JR., in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, KERRI HALL, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, WILLIAM M. HOEY, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, JUDITH LEE, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, LAURA A. LEIGH, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, DEBORA KASZUBA NEARY, CARA PARKINSON, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, BRANDON PELEGANO, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, GINA PICKETT, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, JAMES QUINN, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, JENNIFER ROBINSON, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, MARK SHEA, in their

respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, ROY SMITH, JR., in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, GIOVANNI SPENNATO, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, GEOFFREY STOWELL, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, HARALABOS VALASSIS, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, JULIE VANAM, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, ROBERT A. WILOCK, II, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, BRANDI YANAVICH, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court, MARCI YOUNG, in their respective Official Capacities as Chief Clerks and Deputy Chief Clerks in the Judicial District and Geographical Area courts of the Connecticut Superior Court,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

Before:     CHIN, BIANCO, AND MENASHI, *Circuit Judges*.

Appeal from an order of the United States District Court for the

District of Connecticut (Shea, *J.*), granting a preliminary injunction in favor of

3

plaintiff-appellee Hartford Courant Company, LLC, and enjoining defendants-appellants, who are administrators and clerks at the Connecticut Superior Court, from enforcing a Connecticut statute that mandates automatic sealing of all judicial records and closure to the public of all court proceedings in criminal prosecutions of juvenile defendants transferred to the regular criminal docket.

AFFIRMED.

--------

KATIE TOWNSEND, The Reporters Committee for Freedom of the Press, Washington, D.C. (William S. Fish, Jr., Hinckley, Allen & Snyder LLP, Hartford Connecticut, *on the brief*), *for Plaintiff-Appellee*.

CLARE KINDALL, Solicitor General (Alma Rose Nunley, Michael Skold, Assistant Attorneys General, *on the brief*), *for* William Tong, Attorney General, Hartford, Connecticut, *for Defendants-Appellants*.

David A. Shulz, Sara Sampoli (Law Student), and Emily Wang (Law Student), Yale Law School Media Freedom & Information Access Clinic, New Haven, Connecticut, *for Amicus Curiae Floyd Abrams Institute For Freedom of Expression, in support of Plaintiff-Appellee*.

--------

CHIN, *Circuit Judge*:

In 2019, the Connecticut state legislature enacted Public Act Number 19-187, now codified as Connecticut General Statute § 46b-127 (the "Act"). The Act mandated the automatic sealing of all judicial records and the closure to the public of all court proceedings in cases transferred from the juvenile docket to the regular criminal docket. Plaintiff-appellee Hartford Courant Company, LLC (the "Courant") sued, alleging that the Act violated its right of access to judicial proceedings and records guaranteed by the First Amendment and seeking to enjoin defendants-appellants ("defendants"), who are administrators and clerks at the Connecticut Superior Court, from enforcing the Act. The district court granted the Courant's motion for a preliminary injunction, concluding that the Act violated the Courant's First Amendment rights. On appeal, defendants argue that the district court erred in (1) holding that there is a First Amendment qualified right of access to court records and proceedings in cases transferred from the juvenile docket to the regular criminal docket, (2) finding that the Act was not narrowly tailored to serve a compelling state interest, and (3) granting the preliminary injunction.

As discussed more fully below, we hold that the Courant has a qualified First Amendment right of access to criminal prosecutions of juveniles in regular criminal court. We further hold that the Act infringes on that right because it is not narrowly tailored to serve a compelling state interest. Accordingly, we agree with the district court that the Act is unconstitutional, and we AFFIRM the district court's preliminary injunction.

## BACKGROUND

### I. Statutory Background

Connecticut has a detailed statutory scheme governing the prosecution of juveniles charged with committing crimes. *See* Conn. Gen. Stat. §§ 46b-120, *et seq*. All proceedings concerning "delinquent children" in Connecticut fall under the jurisdiction of the Connecticut Superior Court's family division, *id*. § 46b-121(a)(2)(A), (b)(1), referred to as the "docket for juvenile matters," *id.* § 46b-127, or the "juvenile docket," *State v. Morales*, 694 A.2d 758, 761 (Conn. 1997). Proceedings in cases on the juvenile docket are held in private as far as is practicable, and the records of those proceedings are sealed to the public. Conn. Gen. Stat. §§ 46b-122, 46b-124.

Where a child charged is between the age of fifteen and seventeen and committed a capital felony or certain class A or B felonies, the family division is required to transfer the case from the juvenile docket to the superior court's "regular criminal docket." *Id.* § 46b-127(a)(1). Additionally, on the recommendation of the prosecutor, the family division in its discretion may transfer a case from the juvenile docket to the regular criminal docket if the child charged was fifteen-to-seventeen-years old when he or she committed the offense, "there is probable cause to believe the child has committed the act," and "the best interests of the child and the public will not be served by maintaining the case in the superior court for juvenile matters." *Id.* § 46b-127(a)(3).[1] Discretionary transfer cases may be transferred back to the juvenile docket if "the court determines that the programs and services available pursuant to a proceeding in the superior court for juvenile matters would more appropriately address the needs of the youth and that the youth and the community would be better served by treating the youth as a delinquent." *Id.* § 46b-127(g).

---

[1] Together, these discretionary transfer cases and the automatically transferred cases are referred to herein as "transferred cases."

7

Prior to passage of the Act, Connecticut provided that juveniles in transferred cases "shall stand trial and be sentenced, if convicted, as if such child were eighteen years of age," subject only to some additional considerations that the court can take into account during sentencing due to the child's age. *Id.* § 46b-127(d); *see id.* § 54-91g. But in July 2019, the Connecticut legislature passed the Act, which left the aforementioned provision in the statute unchanged but increased confidentiality for transferred cases.[2] Specifically, effective October 1, 2019,

> Any proceeding of any case transferred to the regular criminal docket pursuant to this section shall be private and shall be conducted in such parts of the courthouse or the building in which the court is located that are separate and apart from the other parts of the court which are then being used for proceedings pertaining to adults charged with crimes. Any records of such proceedings shall be confidential in the same manner as records of cases of juvenile matters are confidential in accordance with the provisions of section 46b-124, except as provided in subparagraph (B) of this subdivision, unless and until the court or jury renders a

---

[2] The Act is titled "An Act Concerning Confidentiality in the Case of a Discretionary Transfer of a Juvenile's Case to the Regular Criminal Docket and Implementing the Recommendations of the Juvenile Justice Policy and Oversight Committee"; by its terms, however, the Act applies to both discretionary and mandatory transfers, and thus the title's reference only to discretionary cases is a misnomer.

> verdict or a guilty plea is entered in such case on the regular criminal docket.

Conn. Gen. Stat. § 46b-127(c)(1)(A).[3]  Prior to October 2019, court proceedings were open and records were available to the public in transferred cases.

Section 46-124, referenced in the portion of the Act quoted above, provides that records for cases on the juvenile docket are presumptively sealed. *Id.* § 46b-124.  Records of delinquency proceedings on the juvenile docket, however, "may be disclosed upon order of the court to any person who has a legitimate interest in the information and is identified in such order."  *Id*. § 46b-124(e).  Additionally, if a child commits a capital felony or a class A felony, his or her name, photograph, and custody status may be disclosed to the public even if that child is prosecuted on the juvenile docket.  *Id.* § 46b-133(a).

In addition to the juvenile docket and the regular criminal docket, there is a subset of cases involving children heard on what is referred to as the "youthful offender docket."  *Id.* § 54-76c(b).  Children charged with felonies other than class A felonies or certain sex offenses are eligible for transfer to the

---

[3]     Subparagraph B as referenced provides that the victim or victims of a crime committed by a juvenile may have access to that juvenile's court records and proceedings.  Conn. Gen. Stat. § 46b-127(c)(1)(B).

youthful offender docket if they have not previously been convicted of a felony on the criminal docket and have not previously been adjudged a serious juvenile offender or serious juvenile repeat offender. *Id.* §§ 54-76b, 76c. Court proceedings and records are presumptively closed and sealed in youthful offender proceedings. *Id.* §§ 54-76h, 76l. A youthful offender determination shall not be "deemed a conviction." *Id.* § 54-76k.

## II.    *Procedural History*

The Courant filed this action on December 11, 2019, and on March 26, 2020, moved for a preliminary injunction prohibiting defendants from sealing or permitting the sealing of any newly filed judicial records in transferred cases and ordering the state to unseal all judicial records of transferred cases that had been sealed pursuant to the Act.

In an opinion dated July 24, 2020, the district court granted the Courant's motion for a preliminary injunction. *Hartford Courant Co. v. Carroll*, 474 F. Supp. 3d 483, 486 (D. Conn. 2020). The district court concluded that the Courant had "shown a clear and substantial likelihood of success on the merits," *id*. at 505, because the Courant had a qualified First Amendment right to access court proceedings and records in transferred cases, *id*. at 496-500, and the Act

10

infringed on that right while not being narrowly tailored to serve a compelling state interest, *id.* at 501-06. Accordingly, the district court enjoined defendants from sealing or permitting the sealing of records in transferred cases and ordered defendants to unseal all automatically transferred cases that had been sealed after the Act went into effect. *Id.* at 507-08. The district court further ordered that discretionary transfer cases would remain sealed for only thirty days so that parties in discretionary transferred cases could file a motion to seal or motion to transfer their cases back to the juvenile docket before those matters became public, but after that thirty-day period, the records were to be unsealed. *Id.* at 508.

On August 18, 2020, prior to the expiration of the thirty-day safe-harbor period, defendants appealed. That same day, defendants filed a motion to stay the preliminary injunction and all further proceedings. The district court denied the motion to stay the preliminary injunction on August 28, 2020, and denied the motion to stay proceedings on September 4, 2020. Defendants then filed an emergency motion in our Court for a stay, which we granted as to both the preliminary injunction and further proceedings in the district court during the pendency of the appeal.

## DISCUSSION

"We review *de novo* the District Court's legal conclusions in deciding to grant a motion for a preliminary injunction, but review its ultimate decision to issue the injunction for abuse of discretion." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020) (footnote and internal quotation marks omitted). "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010) (internal quotation marks omitted).

## I. Applicable Law

It is well established that there is a qualified "First Amendment right of access to criminal trials." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 604 (1982); *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (plurality opinion) ("[H]istorical evidence demonstrates conclusively that at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open."). The right is "qualified" because it "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of

12

sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). But the Supreme Court has explained that "[s]uch circumstances will be rare," *id.*, and the "presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest," *Press-Enter. Co. v. Superior Ct. of Cal.* (*Press-Enterprise I*), 464 U.S. 501, 510 (1984).

Defendants do not dispute the existence of this qualified right, but instead they dispute whether that right extends to criminal trials involving juveniles whose cases are transferred from the family division to the regular criminal docket. They argue that the district court erred in holding that the Courant has a qualified First Amendment right of access to proceedings and records in transferred cases. They further argue that, even assuming such a right exists, the statute is narrowly tailored to further Connecticut's interest in preserving the confidentiality of court records and proceedings pertaining to juvenile defendants. Finally, they argue that the requirements for the issuance of a preliminary injunction have not been met.

Accordingly, we consider (1) whether the Courant has a qualified First Amendment right of access to court records and proceedings in transferred

13

cases; (2) if so, whether the statute is narrowly tailored to accomplish Connecticut's interest in preserving the confidentiality of records and proceedings in question; and (3) whether the district court erred in finding that the requirements for the issuance of a preliminary injunction were met.

## II.    *Application*

### A.    **Right of Access**

"In cases dealing with the claim of a First Amendment right of access to criminal proceedings," we consider two factors:  (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Ct. of Cal.* (*Press-Enterprise II*), 478 U.S. 1, 8 (1986).  "These considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes.  If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." *Id.* at 9.

Accordingly, we first consider whether the place -- that is, the regular criminal court -- and the process -- that is, the manner and method in

14

which juveniles are prosecuted on the regular criminal docket -- have historically been open to the public. We find that they have been. Next, we consider whether public access to court proceedings and records of juveniles prosecuted on the regular criminal docket plays a significant positive role in the functioning of the proceedings. We find that it does.

(i) <u>Whether the Place and Process Have Historically Been Open to the Press and General Public</u>

As the district court properly held, the right of access to court proceedings and records depends on the nature of the proceeding, not on the personal characteristics of the litigant. *See Press-Enterprise II*, 478 U.S. at 8 (considering "place and process," not parties involved). And courts have consistently held that regular criminal courts are presumptively open to the public, *see, e.g.*, *Globe Newspaper Co.*, 457 U.S. at 604; *Richmond Newspapers, Inc.*, 448 U.S. at 569, even where the parties involved in the proceedings are children. For example, in *Globe Newspaper Co.* -- where the Court considered a challenge to a Massachusetts law that excluded observers from criminal proceedings when a minor victim of a specified sexual offense was testifying -- the Court held that the law infringed on the plaintiff-newspaper's First Amendment right of access because criminal trials have "historically . . . been open to the press and general

15

public." 457 U.S. at 598, 605. That the victims who the statute aimed to protect were minors and may logically have been entitled to greater confidentiality protections than adult perpetrators did not militate against the "uniform rule of openness" of criminal proceedings giving rise to First Amendment protection. *Id.* at 605.

In the face of overwhelming case law regarding the openness of criminal trials, defendants argue that "our approach to juvenile offenders has evolved greatly over time," Appellants' Br. at 19, and the uniform rule of openness does not apply to proceedings involving juveniles. But to support this argument, defendants cite to four cases in which confidentiality protections were upheld regarding proceedings held on *juvenile* dockets. *See United States v. Three Juvs.*, 61 F.3d 86, 86 (1st Cir. 1995) (holding that a federal statutory scheme "authorizes, but does not mandate, closure of *juvenile proceedings*" (emphasis added)); *Smith v. Daily Mail Publ'g. Co.*, 443 U.S. 97, 98 (1979) (considering "whether a West Virginia statute violates the First and Fourteenth Amendments of the United States Constitution by making it a crime for a newspaper to publish, without the written approval of the *juvenile court*, the name of any youth charged as a juvenile offender" (emphasis added)); *United States v. Under Seal*, 853

16

F.3d 706, 713 (4th Cir. 2017) (juvenile delinquency proceeding); *In re Gault*, 387 U.S. 1, 4 (1967) (juvenile delinquency proceeding), *abrogation recognized on other grounds in Allen v. Illinois*, 478 U.S. 364, 372 (1986).  Those cases support the unremarkable assertion that juvenile courts typically proceed in private, but they do not refute the presumption of openness applicable to regular criminal cases. In other words, defendants have failed to cite to any authority refuting the district court's holding or the Courant's contention that criminal proceedings have historically been open to the press and public, even when juveniles were involved.  *See Press-Enterprise II*, 478 U.S. at 8.

The Connecticut statutory scheme further emphasizes this point.  A case is transferred from the family division to the regular criminal court only on either a finding by a judge that the juvenile in question should be treated like an adult, Conn. Gen. Stat. § 46b-127(a)(3), or the legislature's determination that juveniles who commit certain crimes should be treated like adults, *id.* § 46b-127(a)(1).  Accordingly, many of the considerations supporting confidentiality are no longer applicable in transferred cases and certainly are not so strong as to disregard the long-standing tradition of openness of proceedings on the regular criminal docket.

17

Regarding "process" -- that is, the manner and method in which juveniles are prosecuted in regular criminal court -- the Connecticut Supreme Court has explained that "it is axiomatic that delinquency proceedings in juvenile court are fundamentally different from criminal proceedings" involving a juvenile. *State v. Ledbetter*, 818 A.2d 1, 13 (Conn. 2003). Additionally, the Connecticut legislature wrote into the law that "[u]pon the effectuation of the transfer" of a minor's case from the juvenile to the regular criminal docket, "such child shall stand trial and be sentenced, if convicted, as if such child were eighteen years of age," subject only to the confidentiality provisions at issue here and certain considerations that are available to judges when sentencing children. Conn. Gen. Stat. § 46b-127(d). Accordingly, both the Connecticut high court and legislature have explicitly stated that the process involved for cases on the regular criminal docket is not the same as the process used for cases on the juvenile docket. The former process is the same whether an adult or juvenile is being tried.

Defendants' arguments to the contrary are unavailing. Defendants first argue that because a regular criminal court can transfer a child's case back to the juvenile or youthful offender docket, juveniles on the criminal docket are

18

subject to different processes than adults. But this argument undercuts

defendants' theory. The statutory scheme provides that on certain showings,

children are eligible for specialized proceedings, *id.* § 46b-127(g); *id.* § 54-76c, but

absent those showings, they are subject to the regular criminal docket and the

regular criminal court process.

Second, defendants argue that a superior court's ability to consider

different and additional factors when sentencing a child shows that juveniles are

unlike adults tried on the regular criminal docket. But flexible sentencing does

not reflect differences in the attendant processes of a criminal proceeding

involving a juvenile as opposed to an adult.

Accordingly, we agree with the district court that, for cases in

criminal court, even those involving juvenile defendants, the "place and process"

have historically been open to the public.

> (ii)    <u>Whether Public Access Plays a Significant Positive Role in the</u>
>         <u>Functioning of the Particular Process in Question</u>

Turning to the second factor, we consider "whether public access

plays a significant positive role in the functioning of the particular process in

question." *See Press-Enterprise II*, 478 U.S. at 8. We find that it does, as it is well

settled that public access plays a positive role in the functioning of criminal

19

proceedings. *Richmond Newspapers, Inc.*, 448 U.S. at 595 (Brennan, J., concurring) ("Secrecy is profoundly inimical to this demonstrative purpose of the trial process. Open trials assure the public that procedural rights are respected, and that justice is afforded equally. Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law. Public access is essential, therefore, if trial adjudication is to achieve the objective of maintaining public confidence in the administration of justice."); *see Press-Enterprise I*, 464 U.S. at 508 ("Openness . . . enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.").

Defendants do not dispute the importance of public access, but they contend that logic supports protecting the confidentiality of juveniles because the interest in protecting children charged with crimes from being stigmatized "overshadow[s] the countervailing interests" of open access. Appellants' Br. at 43. But as the district court pointed out, "the age of the defendant does not alter the fundamental nature of the proceeding," and while there is logic to keeping juveniles' criminal records and proceedings confidential, "whether that right should prevail over countervailing interests is a separate question" from whether

the Courant has a First Amendment right of access. *Hartford Courant Co.*, 474

F. Supp. 3d at 500.

Accordingly, we hold that the Courant has a qualified First

Amendment right to access records and proceedings in transferred cases.

**B.      Narrow Tailoring**

Even when a First Amendment "right of access attaches, it is not

absolute." *Press-Enterprise II*, 478 U.S. at 9. "The presumption of openness may

be overcome only by an overriding interest based on findings that closure is

essential to preserve higher values and is narrowly tailored to serve that

interest." *Press-Enterprise I*, 464 U.S. at 510; *see Globe Newspaper Co.*, 457 U.S. at

606-07 ("Where . . . the State attempts to deny the right of access in order to

inhibit the disclosure of sensitive information, it must be shown that the denial is

necessitated by a compelling governmental interest, and is narrowly tailored to

serve that interest.").

The district court presumed that defendants had "a compelling

interest in protecting the confidentiality of court records and proceedings

pertaining to juvenile defendants." *Hartford Courant Co.*, 474 F. Supp. 3d at 501.

We too can presume without deciding that defendants have established that they

21

have such an interest, because even so, we agree that the Act is not narrowly tailored to serve that interest, and we therefore conclude that it violates the Courant's right of access to the courts.

Defendants argue that the statute is narrowly tailored to protect vulnerable children and promote public safety because "there are numerous ways in which the challenged statute is not a categorical bar on disclosure of records that other courts have suggested might be unconstitutional." Appellants' Br. at 43. We disagree and find that the restriction on access is not narrowly tailored because there is a presumption of confidentiality when it could be the other way around: the state could serve its interest by retaining a presumption of openness once a case is transferred to the regular criminal docket, such that the presumption is overcome only if the court makes findings on the record to the effect that the need for confidentiality outweighs the public's interest in open proceedings.

*Globe Newspaper Co.* is instructive. There, the Court held that "safeguarding the physical and psychological well-being of a minor" is a compelling state interest, "[b]ut as compelling as that interest is, it does not justify a *mandatory* closure rule, for it is clear that the circumstances of the

particular case may affect the significance of the interest."  457 U.S. at 607-08.  The

Court added that "[a] trial court can determine on a case-by-case basis whether

closure is necessary to protect the welfare of a minor victim" and that the

> [compelling state] interest could be served just as well
> by requiring the trial court to determine on a case-by-
> case basis whether the State's legitimate concern for the
> well-being of the minor victim necessitates closure.
> Such an approach ensures that the constitutional right
> of the press and public to gain access to criminal trials
> will not be restricted except where necessary to protect
> the State's interest.

*Id.* at 608-09.  Similarly, in *Press-Enterprise II*, the Court made clear that where "a

qualified First Amendment right of access attaches" to court proceedings, "the

proceedings cannot be closed unless specific, on the record findings are made

demonstrating that 'closure is essential to preserve higher values and is narrowly

tailored to serve that interest.'"  478 U.S. at 13-14 (quoting *Press-Enterprise I*, 464

U.S. at 510).

While the Supreme Court's cases are not entirely on point, their

holdings logically apply here.  Connecticut's interest in protecting juveniles will

be sufficiently served if there is a presumption of openness that can be reviewed

on a case-by-cases basis.  Indeed, defendants have offered no explanation as to

why this would not adequately serve the state's interest in protecting juveniles

23

from the stigma of being criminally tried. Meanwhile, the Courant provided a number of examples, including the prosecution of Michael Skakel, that illustrate why the Act is not narrowly tailored. As of December 2019, Mr. Skakel was fifty-nine-years old, but under the Act, the records and proceedings in his case are mandatorily sealed because, despite being forty when he was charged, he committed his alleged offense at the age of fifteen. The need to protect the confidentiality of juveniles is not implicated by Mr. Skakel's case, and yet the statute's broad scope reaches him, in a case of great public interest. We need not strain ourselves to think of other examples where the statute would broadly overreach. For instance, gang prosecutions involving juveniles are not uncommon, and under the Act, Connecticut courts would be required to conduct numerous secret jury trials, where, given the seriousness of the crimes usually involved, the risk of unfair stigma does not seem to be outweighed by the substantial public interest in disclosure.

Further, even with the confidentiality provisions at issue in place, there are instances in which a juvenile's information is released to the public. If a child commits a capital felony or a class A felony, his or her name, photograph, and custody status may be disclosed to the public even if that child is prosecuted

24

on the juvenile docket. Conn. Gen. Stat. § 46b-133(a). Moreover, the confidentiality provisions applied to transferred cases fall away on a verdict (including acquittal) or a guilty plea. *Id.* § 46b-127(c)(1)(A). Accordingly, the state's interest in protecting children from stigmatization is inconsistently met under the current regime, as numerous juveniles -- tried on both the juvenile and criminal dockets -- including those who are eventually acquitted, are publicly identified. A more narrowly tailored approach -- with a presumption of openness but the availability of confidentiality upon a showing of necessity -- would better balance the public's right of access against the dangers of stigmatizing juveniles by providing fuller protection when necessary.

Finally, to the extent defendants argue that the Act is narrowly tailored because district courts are permitted to order the disclosure of confidential records to any person with a legitimate interest in the case, that argument is unavailing. Because the Act seals the docket sheets of transferred cases, members of the press and public, like the Courant, would not even know of the existence of those cases, and therefore they would not know of the need to request access. Defendants fail to address this point, let alone explain how a

potential avenue for disclosure should be considered available if members of the press or public would have no means to use it.

Accordingly, we hold that the Act is not narrowly tailored to serve a compelling state interest.[4]

## C.    Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (internal quotation marks omitted). "A plaintiff

---

[4]    That the Act allows for disclosure of juvenile records upon a verdict or guilty plea does not change the analysis here. We hold that the Act is not narrowly tailored because a rebuttable presumption of openness adequately serves the state's interest, and thus any presumption of confidentiality or closure, even if only until a verdict or guilty plea, is not sufficiently narrow. Moreover, we note that contemporaneous access to trials, rather than a review of the record following the trial, is an important component to ensuring the proper functioning of the criminal justice system. *See Richmond Newspapers, Inc.*, 448 U.S. at 592 (Brennan, J., concurring) ("[O]pen trials are bulwarks of our free and democratic government: public access to court proceedings is one of the numerous 'checks and balances' of our system, because '*contemporaneous* review in the forum of public opinion is an effective restraint on possible abuse of judicial power.'" (emphasis added) (quoting *In re Oliver*, 333 U.S. 257, 270 (1948))). We have deemed "the media's and the public's qualified right of access to judicial documents" in court proceedings as "derived from or a necessary corollary of the capacity to attend the . . . proceedings," *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004). Accordingly, the disclosure of records *after* proceedings have concluded is insufficient to show that the Act is narrowly tailored to serve a compelling state interest.

26

who seeks a preliminary injunction that will alter the status quo," as is the case here, "must demonstrate a *substantial* likelihood of success on the merits." *Id.* (emphasis added) (internal quotation marks omitted).

Defendants argue that the district court erred in granting a preliminary injunction because the Courant failed to show a substantial likelihood of success on the merits, without which there was no basis to grant a preliminary injunction. Specifically, defendants argue that because no court has squarely ruled on this issue before, it cannot be said that the Courant has a substantial likelihood of success. But that argument would mean that no litigant could ever obtain a preliminary injunction unless a court has previously ruled on the exact issue raised, which is not the case, and certainly defendants have not offered any authority to that end. In any event, as discussed above, the Courant has a qualified First Amendment right of access that was violated by an overly broad statute, and therefore the Courant has established a substantial likelihood of success on the merits. By doing so, the Courant also established that absent the injunction, it would continue to suffer irreparable harm. *See Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir. 1996) ("Violations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary

27

injunction."); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (internal quotation marks omitted)).

In addition to considering the Courant's likelihood of success on the merits and risk of irreparable harm -- both of which the Courant has established -- "we must 'balance the equities' by 'explor[ing] the relative harms to applicant and respondent, as well as the interests of the public at large.'" *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2089 (2017) (Thomas, J., concurring) (alteration in original) (quoting *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1304-05 (1991)); *see Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance-of-equities and public-interest factors "merge when the Government is the opposing party"). Because "securing First Amendment rights is in the public interest," *Walsh*, 733 F.3d at 488, we find that the Courant has shown that all four requirements for a preliminary injunction have been met, and accordingly, the district court did not abuse its discretion in granting one here.

## *CONCLUSION*

For the reasons set forth above, the district court's order is **AFFIRMED**, and our stay is lifted.

28