13-3889-cv
New York Progress and Protection PAC v. Walsh, et al.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: October 18, 2013    Decided: October 24, 2013)

Docket No. 13-3889

- - - - - - - - - - - - - - - - - - - -x

New York Progress and Protection PAC,

Plaintiff-Appellant,

- v.-

James A. Walsh, et al.,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS and LOHIER, Circuit Judges,
               KOELTL,[*] District Judge.

New York Progress and Protection PAC appeals from an order entered in the United States District Court for the Southern District of New York (Crotty, J.), denying a preliminary injunction. For the following reasons, we reverse.

---

[*] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

TODD R. GEREMIA, Jones Day, New York, New York (Michael A. Carvin, Louis K. Fisher, Warren Postman, Jones Day, Washington, DC, and Michael E. Rosman, Center for Individual Rights, Washington, DC, on the brief), for Appellant.

JUDITH VALE, (Richard P. Dearing, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, for Appellees.

DENNIS JACOBS, Circuit Judge:

New York Progress and Protection PAC ("NYPPP"), an "unauthorized political committee" formed to advocate in favor of candidates in New York elections, brought suit against election officials in the State and City of New York, as well as the Board of Elections, to enjoin enforcement of New York State Election Law §§ 14-114(8) and 14-126(2).  Section 14-114(8) imposes a $150,000 aggregate annual limit on certain political contributions by any person in New York State.  Section 14-126(2) makes it a misdemeanor to fail to file required statements or to knowingly and willfully violate any other provision of the Election Law.  The effect of these provisions is to prevent NYPPP from receiving more than $150,000 from any individual contributor in any calendar year.  NYPPP is a political

2

committee that engages solely in independent expenditures, that is, expenditures made without prearrangement or coordination with a candidate. NYPPP, which has a donor waiting to contribute $200,000 to its cause, alleges that, as applied to NYPPP, the cap violates its core First Amendment right to advocate in favor of Joseph Lhota in the upcoming New York mayoral election, and seeks declaratory and injunctive relief.

The New York City mayoral Republican primary was held September 10, 2013. NYPPP filed suit two weeks later, on September 25, 2013, and the following day made a motion for a preliminary injunction. The United States District Court for the Southern District of New York (Crotty, J.) ordered briefing and set oral argument for Tuesday, October 8. On Friday, October 11, NYPPP filed a letter reiterating the urgency of the matter in light of the approaching November 5 mayoral election. On October 16, NYPPP filed a petition for a writ of mandamus with this Court to compel the district court to rule on the pending motion. Soon after argument on the mandamus petition was scheduled for Friday, October 18, the district court issued an opinion and order denying NYPPP's motion. N.Y. Progress & Prot. PAC v. Walsh, No. 13-

cv-6769 (PAC), 2013 WL 5647168 (S.D.N.Y. Oct. 17, 2013) ("Op. & Order").  In quick succession, NYPPP withdrew its mandamus petition and appealed from the district court's order, and we agreed to hear argument as originally scheduled.

The appeal was heard on the merits at oral argument on October 18.

## I

The district court's denial of a preliminary injunction is reviewed for abuse of discretion.  WNET, Thirteen v. Aereo, Inc., 712 F.3d 676, 684 (2d Cir. 2013).  "Such an abuse occurs when the district court bases its ruling on an incorrect legal standard or on a clearly erroneous assessment of the facts."  Bronx Household of Faith v. Bd. of Educ. of City of N.Y., 331 F.3d 342, 348 (2d Cir. 2003).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).  Although we must defer to the district court's factual findings, in First Amendment

4

cases, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499 (1984) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 284–286 (1964)).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A plaintiff who seeks a preliminary injunction that will alter the status quo must demonstrate a "substantial" likelihood of success on the merits. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004).

**II**

"The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). "The

harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) (internal quotation marks and alterations omitted). The State argues that injury is not presumed in First Amendment cases unless the challenged law "directly limits speech," Bronx Household, 331 F.3d at 349, and that no such presumption arises in this case because the limits are imposed indirectly. But Bronx Household identified a category of indirect limits on speech by reference to Latino Officers Ass'n v. Safir, 170 F.3d 167, 171 (2d Cir. 1999), which dealt with a policy requiring police officers to notify their department about their speaking engagements and to provide a written summary of the speech the day after the engagement. See Bronx Household, 331 F.3d at 350 (discussing Latino Officers). There we "found the theoretical possibility of a chilling effect on officers' speech too conjectural and insufficient to establish irreparable harm." Id. The policy at issue in Latino Officers bears no resemblance to the direct restriction on political expression at issue here.

6

Although we express no opinion on the ultimate outcome, the plaintiff here has a substantial likelihood of success on the merits. The Supreme Court held in <u>Citizens United v. FEC</u> that the government has no anti-corruption interest in limiting independent expenditures. 558 U.S. 310, 357-61 (2010). It follows that a donor to an independent expenditure committee such as NYPPP is even further removed from political candidates and may not be limited in his ability to contribute to such committees.[1] All federal circuit courts that have addressed this issue have so held.

---

[1] This result obtains regardless of the standard of review. After <u>Buckley v. Valeo</u>, political contribution limits are subject to heightened scrutiny, which requires that they be "closely drawn" to match a "sufficiently important interest." 424 U.S. 1, 25 (1976). Expenditure limits are subject to even higher scrutiny, requiring that they be narrowly tailored to meet a compelling government interest. <u>See</u> <u>Citizens United</u>, 558 U.S. at 340. In this case, the effect of the restrictions is to limit contributions that can be made to a committee that seeks to make independent expenditures. It is unnecessary to decide which level of scrutiny should apply, because preventing <u>quid pro quo</u> corruption is the only government interest strong enough to justify restrictions on political speech, <u>see</u> <u>id.</u> at 357-61, and the threat of <u>quid pro quo</u> corruption does not arise when individuals make contributions to groups that engage in independent spending on political speech, <u>see</u> <u>Wis. Right to Life State Political Action Comm. v. Barland</u>, 664 F.3d 139, 154 (7th Cir. 2011). <u>See also</u> <u>SpeechNow.org v. FEC</u>, 599 F.3d 686, 694 (D.C. Cir. 2010); <u>Long Beach Area Chamber of Commerce v. City of Long Beach</u>, 603 F.3d 684, 696 (9th Cir. 2010).

See Texans for Free Enterprise v. Tx. Ethics Comm'n, No. 13-50014, 2013 WL 5639542, at *2 (5th Cir. Oct. 16, 2013) ("We adopt the reasoning of our sister courts and hold that the challenged law is incompatible with the First Amendment."); Wis. Right to Life State Political Action Comm. v. Barland, 664 F.3d 139, 143 (7th Cir. 2011) ("On the merits, after Citizens United ..., [the Wisconsin campaign finance law] is unconstitutional to the extent that it limits contributions to committees engaged solely in independent spending for political speech."); Long Beach Area Chamber of Commerce v. City of Long Beach, 603 F.3d 684, 696 (9th Cir. 2010) ("Nor has the City shown that contributions to the Chamber PACs for use as independent expenditures raise the specter of corruption or the appearance thereof."); SpeechNow.org v. FEC, 599 F.3d 686, 695 (D.C. Cir. 2010) (en banc) ("Given this analysis from Citizens United, we must conclude that the government has no anti-corruption interest in limiting contributions to an independent expenditure group ....."); N.C. Right to Life, Inc. v. Leake, 525 F.3d 274, 293 (4th Cir. 2008) (declaring unconstitutional, pre-Citizens United, contribution limit to independent expenditure political committees because no anti-corruption interest was

furthered).  The D.C. Circuit appeal, taken from the denial of a motion for a preliminary injunction, was heard <u>en banc</u> in the first instance and was decided unanimously.  Numerous federal district courts across the country have struck down analogous laws.[2]

Few contested legal questions are answered so consistently by so many courts and judges.  The district court, however, conducted no analysis of NYPPP's likelihood

---

[2] <u>See, e.g.</u>, <u>Stay the Course W. Va. v. Tennant</u>, No. 12-cv-01658, 2012 WL 3263623, *6 (S.D. W. Va. Aug. 9, 2012) ("The government has no interest in maintaining the contribution limit as applied to [independent expenditure groups]"); <u>Lair v. Murry</u>, 871 F. Supp. 2d 1058, 1068 (D. Mont. 2012) ("[U]nder <u>Citizens United</u> ... governments cannot ban corporate contributions to political committees that the committees then use for independent expenditures"); <u>Yamada v. Weaver</u>, 872 F. Supp. 2d 1023, 1041 (D. Haw. 2012) ("[C]ontribution limitations to [independent expenditure] organizations violate the First Amendment"); <u>Pers. PAC v. McGuffage</u>, 858 F. Supp. 2d 963, 969 (N.D. Ill. 2012) ("[R]egulations imposing limits on fundraising by independent expenditure organizations cannot be justified"); <u>Republican Party of N.M. v. King</u>, 850 F. Supp. 2d 1206, 1215 (D.N.M. 2012) ("New Mexico does not have an anti-corruption interest capable of justifying contribution limits if those contributions are to be used exclusively for independent expenditures"); <u>Fund for Jobs, Growth, & Sec. v. N.J. Election Law Enforcement Comm'n</u>, No. 13-CV-02177-MAS-LHG (D.N.J. July 11, 2013) (consent order permanently enjoining the New Jersey Election Law Enforcement Commission from enforcing New Jersey's contribution limits so long as expenditures are not coordinated with candidates or political party committees).

of success.[3]  See Op. & Order at *14 ("[T]he Court need not address whether NYPPP can establish a substantial likelihood of success on the merits or irreparable harm."). Consideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor.  See, e.g., Joelner v. Vill. of Wash. Park, 378 F.3d 613, 620 (7th Cir. 2004) ("When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor." (citing Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998))). This was reversible error.

**III**

The district court combines its analysis of the balance

---

[3] The district court posits that "so-called independent expenditure-only committees that have only one purpose - advancing a single candidacy at a single point in time - are not truly independent as a matter of law."  Op. & Order at *9.  Not so.  Under Buckley and Citizens United, "absence of prearrangement and coordination" with a candidate are the hallmarks of committee independence.  See Citizens United, 558 U.S. at 345; Buckley, 424 U.S. at 47.  An independent committee's choice to advocate on behalf of a single candidate, and its formation after that candidate is nominated, are irrelevant.

10

of hardships and the public interest, and assumes that by definition the interests of the State are aligned with those of the public. Op. & Order at *7 ("Since the State Defendants represent the public, there are important public interests at stake, which must be weighed against the hardships suffered by NYPPP if an injunction is not granted."). However, securing First Amendment rights is in the public interest. See Am. Civil Liberties Union v. Ashcroft, 322 F.3d 240, 247 (3d Cir. 2003) ("[T]he Government does not have an interest in the enforcement of an unconstitutional law." (internal quotation marks omitted)).

The hardship faced by NYPPP and its donors from the denial of relief is significant. Every sum that a donor is forbidden to contribute to NYPPP because of this statute reduces constitutionally protected political speech. Much of the district court's analysis of hardship focuses on hardship to the election system arising from the timing of this suit and this motion for a preliminary injunction. But as the Supreme Court has emphasized, the value of political speech is at its zenith at election time:

> It is well known that the public begins to concentrate on elections only in the weeks immediately before they

11

> are held.  There are short timeframes in which speech can have influence.  The need or relevance of the speech will often first be apparent at this stage in the campaign.  The decision to speak is made in the heat of political campaigns, when speakers react to messages conveyed by others.  A speaker's ability to engage in political speech that could have a chance of persuading voters is stifled if the speaker must first commence a protracted lawsuit.

Citizens United, 558 U.S. at 334.

The district court found that granting NYPPP a preliminary injunction would create "confusion" over whether other committees were covered by the injunction and, "[e]ven more troubling," that an injunction "would amplify NYPPP's voice over the voices of other political committees" because the State would still be "free to prosecute others who may violate the statute."  Op. & Order at *10-11 (internal quotation marks omitted).  True, the preliminary injunction that we direct be entered frees only NYPPP.  But as described by the district court, these concerns are neither sufficiently severe disruptions to the election process itself nor sufficiently particularized to outweigh the irreparable harm that stems from restrictions on political speech.

The State relies on cases such as Reynolds v. Sims, 377 U.S. 533 (1964), for the proposition that denial of the

12

preliminary injunction should be affirmed because of the disruption the preliminary injunction would cause to the election process.  But Reynolds involved the complicated process of legislative reapportionment, and there is no comparable showing of what burdens would be imposed on the State by freeing NYPPP from the limit on individual contributions that it can receive in connection with the upcoming election.

**IV**

The district court thought that the plaintiff created an "artificial urgency" by waiting until "forty-one days before the ... election" before filing suit.  Op. & Order at *12.  Although the district court cited insufficient time for "fair consideration ... before deciding a constitutional issue of such importance," Op. & Order at *9, we should not "mak[e] unnecessary distinctions ... between speech that we find to be urgent and that which we think can bide its time," Tunick v. Safir, 209 F.3d 67, 95 (2d Cir. 2000) (Sack, J., concurring).  "We ought not to be determining what speech is pressing and what can suffer the law's delay.  That, like deciding what speech is important and what

13

unimportant, is not for the courts." Id. Tunick treated as pressing a public display of nudity; political speech is not a lesser order of expression.

## CONCLUSION

For the foregoing reasons, the order denying the preliminary injunction is reversed, and the district court shall forthwith enter a preliminary injunction enjoining the application and enforcement of N.Y. Elec. Law §§ 14-114(8) and 14-126 against NYPPP and its individual donors for the use of the contributions of those donors only for independent expenditures. The mandate shall issue immediately.

14