20-2170-cv
Pharaohs GC, Inc. v. United States Small Business Administration

# United States Court of Appeals
## for the Second Circuit

August Term, 2020

(Argued: November 3, 2020　　　Decided: March 4, 2021)

Docket No. 20-2170-cv

———————————————————————

PHARAOHS GC, INC.,

*Plaintiff-Appellant*,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION, TAMI PERRIELLO, in her Official Capacity as Acting Administrator of the Small Business Administration, UNITED STATES OF AMERICA, JANET YELLEN, in her Official Capacity as United States Secretary of Treasury,

*Defendants-Appellees.**

———————————————————————

Before:

LOHIER and PARK, *Circuit Judges*, and RAKOFF, *District Judge*.[†]

In March 2020, Congress created the Paycheck Protection Program ("PPP" or "Program"), which authorized the Small Business Administration ("SBA") to

---

\* Under Fed. R. App. P. 43(c)(2), Tami Perriello is automatically substituted for Jovita Carranza in her official capacity as Acting Administrator of the Small Business Administrator and Janet Yellen is automatically substituted for Steve Mnuchin in her official capacity as Secretary of the Treasury. The Clerk of Court is respectfully directed to amend the caption of this matter accordingly.

† Judge Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

guarantee favorable loans to certain businesses affected by the COVID-19 pandemic. The SBA promulgated regulations imposing several longstanding eligibility requirements on PPP loan applicants, including that no SBA guarantee would be given to businesses presenting "live performances of a prurient sexual nature." Pharaohs GC, Inc. ("Pharaohs"), a business featuring nude dancing, sought a preliminary injunction directing the SBA to give it a PPP loan guarantee. The United States District Court for the Western District of New York (Vilardo, *J.*) denied the motion. On appeal, Pharaohs argues that the regulation violates the Administrative Procedure Act and the First and Fifth Amendments to the U.S. Constitution. We hold that the district court did not abuse its discretion in finding that Pharaohs has failed to show that it is substantially likely to succeed on its claims that (1) the SBA exceeded its statutory authority to promulgate eligibility restrictions, and (2) the exclusion of nude-dancing establishments from the Program violates the First or Fifth Amendments. We thus **AFFIRM**.

STEVEN M. COHEN (William A. Lorenz, Jr., *on the brief*), Hogan Willig, PLLC, Amherst, New York *for Plaintiff-Appellant*.

COURTNEY L. DIXON (James P. Kennedy, Jr., Michael S. Raab, *on the brief*), *for* Jeffrey Bossert Clark, Acting Assistant Attorney General *for Defendants-Appellees*.

PARK, *Circuit Judge*:

In March 2020, Congress created the Paycheck Protection Program ("PPP" or "Program"), which authorized the Small Business Administration ("SBA") to guarantee favorable loans to certain businesses affected by the COVID-19 pandemic. The SBA Administrator promulgated regulations imposing several longstanding eligibility requirements on PPP loan applicants, including that no

SBA guarantee would be given to businesses presenting "live performances of a prurient sexual nature." Pharaohs GC, Inc. ("Pharaohs"), a business featuring nude dancing, sought a preliminary injunction directing the SBA to give it a PPP loan guarantee. The United States District Court for the Western District of New York (Vilardo, *J*.) denied the motion. On appeal, Pharaohs argues that the regulation violates the Administrative Procedure Act and the First and Fifth Amendments to the U.S. Constitution. We hold that the district court did not abuse its discretion in finding that Pharaohs has failed to show that it is substantially likely to succeed on its claims that (1) the SBA exceeded its statutory authority to promulgate eligibility restrictions, and (2) the exclusion of nude-dancing establishments from the Program violates the First or Fifth Amendments. We thus affirm.

## I. BACKGROUND

A. The CARES Act

In response to the COVID-19 pandemic, Governor Andrew Cuomo ordered the closure of most "non-essential" businesses in the State of New York. N.Y. Exec. Order 202.8 (Mar. 20, 2020) ("Each employer shall reduce the in-person workforce at any work locations by 100%."). Later that month, Congress passed the

Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which created the Paycheck Protection Program, authorizing the SBA to guarantee loans to small businesses affected by the pandemic. Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–94 (2020) (codified at 15 U.S.C. § 636(a)). PPP loans are forgiven to the extent the borrower uses the funds for payroll costs (including group health insurance and other benefits), mortgage interest, rent, or utilities. 15 U.S.C. §§ 636(a)(36)(B), (F), 9005(b). Congress initially authorized $349 billion in loan commitments and added another $310 billion a month later. *See* CARES Act § 1102(b), 134 Stat. at 293; Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620, 620 (2020).[1]

Congress placed the Program under section 7(a) of the Small Business Act, 15 U.S.C. § 636(a). The 7(a) loan program is the SBA's primary program for providing financial assistance to small businesses. Congress authorized the SBA Administrator to guarantee PPP loans "under the same terms, conditions, and processes" as 7(a) loans. *Id.* § 636(a)(36)(B). Pursuant to the CARES Act, 15 U.S.C. § 9012, the SBA Administrator exercised emergency rulemaking authority to

---

[1] Congress has since allowed for a "second draw" of PPP loans. *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 311, 134 Stat. 1182, 2001–07 (2020). It authorized an additional $147.45 billion, and appropriated $35 billion solely for businesses that have not yet received any PPP loans. *Id.* § 323(a)(1)(D), (d)(1)(A)(iv), 134 Stat. at 2019–20.

4

promulgate several interim final rules to "carry out" the Program.[2]  As those rules explain, small businesses seeking PPP loans must apply through an approved lender.  85 Fed. Reg. at 20,812.  PPP loans are distributed on a "first come, first served" basis until the full amount of the congressionally authorized loan commitment has been met.  *Id.* at 20,813.

The rules governing eligibility for PPP loans incorporated longstanding restrictions on eligibility for 7(a) loans.  A section of the first interim final rule entitled "How do I determine if I am ineligible?" provides that the types of businesses categorically ineligible for 7(a) loans also are ineligible for PPP loans.  *Id.* at 20,812 (incorporating 13 C.F.R. § 120.110, restrictions on eligibility for certain "types of businesses").  The rule's sole exception to the adoption of 7(a)'s eligibility restrictions is for nonprofit organizations, which Congress expressly made eligible for PPP loans.  *See id.*; 15 U.S.C. § 636(a)(36)(D)(i) (making nonprofit organizations eligible for PPP loans).  Thus, the "types of businesses" that are not eligible for PPP loans include foreign businesses, "[p]yramid sale distribution plans," "[s]peculative businesses (such as oil wildcatting)," businesses with an associate

---

[2] *See, e.g.*, Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020); Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 21,747 (Apr. 20, 2020); Paycheck Protection Program—Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23,450 (Apr. 28, 2020).

indicted for a felony or crime of moral turpitude, "[b]usinesses primarily engaged in political or lobbying activities," and, as relevant here, businesses that "[p]resent live performances of a prurient sexual nature—*i.e.*, the "prurience restriction." 13 C.F.R. § 120.110.

B.     Facts and Procedural History

Pharaohs is a "gentlemen's club" outside Buffalo, New York, that features nude dancing. It closed to customers on March 15, 2020, and has stayed closed in compliance with Governor Cuomo's orders. Pharaohs applied for a PPP loan of $345,067.50 through Live Oak Bank to pay wages to its 76 employees, among other expenses. An underwriter at Live Oak Bank informed Pharaohs that its loan application would be rejected because Pharaohs, as a business providing live entertainment of a prurient sexual nature, is not eligible to participate in the Program.

Pharaohs filed this action in the U.S. District Court for the Western District of New York, alleging that the eligibility restriction is inconsistent with the CARES Act and violates its constitutional rights and seeking injunctive, declaratory, and monetary relief. Pharaohs also moved for a temporary restraining order and preliminary injunction. The SBA agreed to reserve $345,067.50 in PPP funds

6

pending resolution of the motion for a preliminary injunction, so Pharaohs withdrew the motion for a temporary restraining order. Live Oak Bank has placed Pharaohs's application on hold pending the outcome of this case.

Pharaohs contended that (1) the prurience restriction is unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(C), because it is inconsistent with the CARES Act; and (2) the restriction violates the First and Fifth Amendments by burdening nude dancing, a protected form of expression. Pharaohs alleged that "there is a high likelihood that the business will fail without the PPP funding." App'x at 62. Pharaohs asked the court to enjoin the SBA "from making eligibility determinations and withholding funding under the PPP due to the fact that the Plaintiff's business is involved in adult entertainment" and to direct the SBA "to transmit loan guarantee authority to Live Oak Bank." *Id.* at 36–37.

The district court denied the motion, concluding that "Pharaohs has not shown—let alone clearly shown—that it is likely to succeed on the merits of its claim." *Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, No. 20-cv-655, 2020 WL 3489404, at *3 (W.D.N.Y. June 26, 2020). Pharaohs now appeals that decision. We have jurisdiction under 28 U.S.C. §§ 1292(a)(1), 1331 and 15 U.S.C. § 634(b)(1).

7

## II. DISCUSSION

A.    Standard of Review

To demonstrate that a preliminary injunction should be entered in its favor, Pharaohs "must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in [its] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Furthermore, because Pharaohs "seeks a preliminary injunction that will alter the status quo," it must "demonstrate a 'substantial' likelihood of success on the merits." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (citation omitted).

We review the denial of a preliminary injunction for abuse of discretion. *Id*. "Such an abuse occurs when the district court bases its ruling on an incorrect legal standard or on a clearly erroneous assessment of the facts." *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348 (2d Cir. 2003).

B.    Likelihood of Success on the Merits: APA Claim

Pharaohs first argues that the SBA's exclusion of adult-entertainment venues from the Program is inconsistent with the CARES Act. This argument is

unlikely to succeed because Congress gave the SBA Administrator discretion to exclude certain types of businesses from the Program.

The CARES Act states that "the Administrator may guarantee [PPP] loans under the same terms, conditions, and processes" as a 7(a) loan "except as otherwise provided." 15 U.S.C. § 636(a)(36)(B). And Congress provided for "[i]ncreased eligibility for certain small businesses and organizations" in subparagraph D of the Program. That provision states:

> [I]n addition to small business concerns, any business concern [or] nonprofit organization . . . shall be eligible to receive a [PPP] loan if the business concern [or] nonprofit organization . . . employs not more than the greater of--
>      (I) 500 employees; or
>      (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern [or] nonprofit organization . . . operates.

*Id.* § 636(a)(36)(D)(i).

Pharaohs argues that "any business concern . . . shall be eligible" means that *every* "business concern" with no more than 500 employees is eligible for PPP loans. Based on this broad wording, Pharaohs charges that the Administrator overstepped her authority under the CARES Act by excluding nude-dancing establishments from the Program. Thus, Pharaohs concludes that we must "hold

9

unlawful and set aside" the Administrator's action because it was "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

To review whether an interim final rule exceeds the authority conferred by statute, we apply the two-step framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See United States v. Mead Corp.*, 533 U.S. 218, 227, 230–31 (2001) (advising that "rules carrying the force of law" are subject to the *Chevron* framework even when, as with interim final rules, such rules were promulgated without the aid of notice and comment). Deference under *Chevron* "is not due unless a 'court, employing traditional tools of statutory construction,' is left with an unresolved ambiguity." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) (quoting *Chevron*, 467 U.S. at 843 n.9). And as the Supreme Court has explained in a related context, "a court must exhaust all the 'traditional tools'" before concluding that there is a genuine ambiguity. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

We reject Pharaohs's argument because the CARES Act unambiguously gives the Administrator discretion to adopt the longstanding "terms, conditions, and processes" of the 7(a) program. Subparagraph D's statement that "any business concern . . . shall be eligible" is not to the contrary when read in its

statutory context—specifically, its foundation in the Small Business Act's 7(a) loan program. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted).

"[T]he PPP was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority." *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020). Reading subparagraph D in the context of the SBA's 7(a) loan program, it is clear that Pharaohs's interpretation—*i.e.*, "any business concern" means "every business concern"—is not tenable.

First, under Pharaohs's reading, the Administrator would be unable to exclude certain businesses from the Program, which would render several

11

provisions of the CARES Act superfluous. For example, if the Administrator could not base eligibility on a small business's collateral or the businessowner's personal guarantee, there would be no reason for the CARES Act to lift SBA regulations requiring collateral and a personal guarantee. *See* 15 U.S.C. § 636(a)(36)(J). So too with the provision making some affiliates eligible, *id.* § 636(a)(36)(D)(iv), and the provision waiving the usual requirement that the business not be able to obtain credit elsewhere, *id.* § 636(a)(36)(I). "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up); *see also In re Gateway Radiology Consultants*, 983 F.3d at 1258 ("[I]t would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility . . . because other sections of the CARES Act waive or relax for PPP loans other § 7(a) requirements.").

Second, Congress enacted the Program on the foundation of the SBA's 7(a) loan program, excluding some eligibility limits but not the prurience restriction. We presume that Congress legislates against the backdrop of existing law. *See Garcia v. Teitler*, 443 F.3d 202, 207 (2d Cir. 2006). Here, the context in which Congress created the Program included longstanding regulatory limits on SBA

loan eligibility, such as the prurience restriction. For example, the CARES Act expressly includes nonprofit organizations—the very first type of business excluded under the existing 7(a) program rules. *See* 15 U.S.C. § 636(a)(36)(A)(vii), (D)(i); 13 C.F.R. § 120.110(a). But Congress did not similarly clarify its intent to include adult-entertainment businesses in the Program (or foreign businesses, lobbyists, illegal businesses, or oil wildcatters). This strongly suggests that Congress deliberately chose not to change the Administrator's statutory discretion to exclude businesses, other than those it expressly identified in the CARES Act. *Cf. Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 342 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Subparagraph D must be understood as simply raising the employee threshold defining eligibility for small business relief to 500 and including a few other kinds of employers in the Program, like nonprofit organizations and sole

proprietors.[3] It does not require the Administrator to make eligible *all* businesses below that threshold. Indeed, the CARES Act expressly gives the Administrator the general authority to adopt the "same terms, conditions, and processes" for PPP loans as for 7(a) loans. 15 U.S.C. § 636(a)(36)(B).[4]

Finally, even if subparagraph D were ambiguous, the Administrator would still prevail because the SBA's interpretation is reasonable. "The question for the reviewing court at *Chevron* Step Two is whether the agency's answer to the interpretive question is based on a permissible construction of the statute." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 520 (2d Cir. 2017) (cleaned up). It is a permissible construction of subparagraph D to situate its use of the phrase "any business concern" within the limits imposed by its statutory

---

[3] Congress crafted subparagraph D against the backdrop of detailed, industry-specific "size standards defin[ing] whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns," such as the 7(a) loan program. 13 C.F.R. § 121.101. For many industries, businesses with 500 employees (or fewer) are not considered small businesses, whether because the cutoff is much lower than 500 employees or because the standard is based on a business's revenue instead of its number of employees. *See id.* For Program eligibility, however, Congress enlarged the definition of a small business also to include other "business concerns" that have no more than 500 employees. 15 U.S.C. § 636(a)(36)(D)(i).

[4] In *DV Diamond Club of Flint, LLC v. Small Business Administration*, 960 F3d 743 (6th Cir. 2020), on which Pharaohs relies, the Sixth Circuit addressed the same issue, but in a different context. There, the district court had granted an injunction in favor of the adult-entertainment venue. *Id.* at 746. Thus, the government bore the burden of showing its entitlement to injunctive relief. *Id.* Pharaohs bears that burden here.

14

and regulatory context. *See Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014) (acknowledging the importance of statutory context at *Chevron* Step Two).

C.   Likelihood of Success on the Merits: Constitutional Claims

Pharaohs also contends that the SBA's exclusion of businesses from the Program based on the prurience restriction violates its equal protection and First Amendment rights. Pharaohs appears to offer three different theories as to why it believes the prurience restriction is unconstitutional. First, Pharaohs says that the restriction impermissibly regulates protected speech. Second, Pharaohs suggests that the restriction would fail rational-basis review because its impermissible purpose is to exclude businesses expressing a disfavored message from a program that was created to assist all small businesses. Finally, Pharaohs contends that the prurience restriction is unconstitutional viewpoint discrimination. We are not persuaded by these arguments and conclude that Pharaohs is unlikely to succeed on the merits of its constitutional claims.

1.   *Regulation of Expression*

First, the Program's prurience restriction is not subject to strict scrutiny because, with exceptions not satisfied here, restrictions on government subsidies are subject to less demanding review.

15

Although nude dancing "is expressive conduct protected by the First Amendment," *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565 (1991) (plurality opinion), it "falls only within the outer ambit of the First Amendment's protections," *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion). Nude dancing thus involves "only the barest minimum of protected expression." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

Pharaohs contends that the Administrator "seeks to regulate speech of private businesses" in violation of the Constitution. Appellant's Br. at 30. Pharaohs's argument appears to turn on the distinction between permissible funding conditions that set the scope of a government subsidy and funding conditions that amount to backdoor regulation of speech.

The general rule is that "when the Government appropriates public funds to establish a program it is entitled to define the limits of that program." *Rust v. Sullivan*, 500 U.S. 173, 194 (1991). But "the government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (cleaned up). In other words, the government may set funding terms and conditions that "specify the activities Congress wants to subsidize" unless those

16

terms and conditions "seek to leverage funding to regulate speech outside the contours of the program itself." *Id.* at 214–15; *see Rust*, 500 U.S. at 197 (rejecting challenge to subsidy program that did not "effectively prohibit[] the recipient[s] from engaging in the protected conduct outside the scope of the federally funded program").

The prurience restriction at issue here excludes certain types of businesses from eligibility for PPP loans—it does not directly regulate speech. The prurience restriction is thus part of a selective subsidy program. In *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983), the Supreme Court held that the exclusion of lobbying organizations from the tax exemption for nonprofits did not violate the First Amendment. *Id.* at 549 (explaining that the "decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny"). The Court concluded that the tax exemption was a subsidy because it had "much the same effect as a cash grant." *Id.* at 544. And the "selection of particular entities or persons for entitlement to this sort of largesse 'is obviously a matter of policy and discretion not open to judicial review unless in circumstances which here we are not able to find.'" *Id*. at 549 (citations omitted).

17

In its motion for mandatory injunctive relief, Pharaohs has not made the necessary "clear showing" that the restriction at issue here improperly leverages the subsidy to regulate speech. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). As with the subsidy in *Regan*, PPP loans are broadly available, but the government has decided not to subsidize certain types of businesses, even if they engage in constitutionally protected activities. The government does not violate a plaintiff's rights "by declining to subsidize its First Amendment activities." *Regan*, 461 U.S. at 548. "The Court has never held that Congress must grant a benefit . . . to a person who wishes to exercise a constitutional right." *Id.* at 545. Likewise, there is no indication that the restriction here "was intended to suppress" protected conduct. *Id.* at 548; *see id.* ("The case would be different if Congress were to discriminate invidiously in its subsidies in such a way as to aim at the suppression of dangerous ideas." (internal quotation marks omitted)). And while a funding restriction might also be unconstitutional if it regulates a recipient's speech outside of the government program, *see FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 399–400 (1984), Pharaohs has failed to articulate how the prurience restriction does so here.

18

We thus hold that the district court did not abuse its discretion by declining to apply strict scrutiny to the government's decision to exclude certain entities from receiving subsidies under the Program.

2.    *Legitimate Government Interest*

The government's decision not to subsidize certain activities need only "bear a rational relation to a legitimate government purpose." *Regan*, 461 U.S. at 547 (applying rational-basis review to, as here, a challenge to a selective subsidy under both the Free Speech and Equal Protection Clauses); *accord Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 91–92, 97 (2d Cir. 2003). We thus apply rational-basis review to the Administrator's exclusion of nude-dancing establishments from the Program. Although the rational-basis standard is "not meant to be toothless," it provides no "license for courts to judge the wisdom, fairness, or logic of legislative choices." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (internal quotation marks omitted).

The Administrator asserts that the exclusion of businesses presenting live performances of a prurient sexual nature is rationally related to the government's legitimate interest in prioritizing its finite resources. This account mirrors the rationale the SBA gave when it first proposed the exclusion of such businesses

19

from 7(a) loans.  In its 1995 notice of proposed rulemaking, the SBA justified the exclusion of lawful but prurient businesses as consistent with its "obligation to direct its limited resources and financial assistance to small businesses in ways which will best accomplish SBA's mission, serve its constituency, and serve the public interest."  Business Loan Programs, 60 Fed. Reg. 64,356, 64,360 (Dec. 15, 1995).  Although the prioritized distribution of finite resources is a legitimate government interest, this rationale does not explain why there is an interest in deprioritizing businesses featuring nude dancing.

It is the movant's burden, however, to negate the bases that "might support" the regulation. *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller v. Doe*, 590 U.S. 312, 320 (1993)).  Pharaohs asserts that "the only apparent purpose for this regulation is to exclude small businesses that express a disfavored message from programs that were created to assist all small businesses."  Appellant's Br. at 23 (quoting *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1061 (E.D. Wis. 2020)).  But Pharaohs fails to acknowledge that legitimate interests may be served by the government's decision not to subsidize adult-entertainment venues.  *See, e.g., City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47–49 (1986) (holding that local governments

may enact zoning ordinances against adult movie theaters to curb negative "secondary effects"); *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 63 (1973) (recognizing the government's legitimate interest in curbing the "debas[ing]" influence of "commercial exploitation of sex").

On the limited record before us, Pharaohs has not shown that the SBA's decision to exclude adult-entertainment venues from receiving limited CARES Act funds lacks a rational relationship to any legitimate government interest. *Regan*, 461 U.S. at 547. For purposes of a preliminary injunction, we conclude that Pharaohs is unlikely to demonstrate a violation of its constitutional rights.

3. *Viewpoint-Based Discrimination*

Pharaohs also contends that the exclusion of businesses hosting "live performances of a prurient sexual nature" is unconstitutional viewpoint-based discrimination.[5] It argues that nude dancing illustrates the viewpoint "that lust or sexual desire is good" and that the SBA's refusal to fund nude-dancing

_____

[5] The question whether a spending condition discriminates based on viewpoint is not unrelated to, and in some cases may be duplicative of, the question of whether the condition is functionally a regulation of speech, because subsidies "aimed at the suppression of dangerous ideas," *Regan*, 461 U.S. at 550, will often adopt viewpoint-based classifications. *See, e.g., Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998) (describing government "leverag[ing] its power to award subsidies" as a means of viewpoint discrimination); *Boy Scouts*, 335 F.3d at 91–92 (same).

21

establishments is a viewpoint-based classification instead of a content-based one. Appellant's Br. at 33. We disagree: "prurient" describes a type of content, not a viewpoint.

In *General Media Communications, Inc. v. Cohen*, 131 F.3d 273 (2d Cir. 1997), we upheld a prohibition against the sale on military bases of material, "the dominant theme of which depicts or describes nudity . . . in a lascivious way." *Id*. at 282. This is because "lasciviousness" is a content-based distinction describing the subject of the prohibition. *Id.* at 281–82, 287–88 (quoting 10 U.S.C. § 2489a(d)). We thus rejected the argument that lasciviousness is a viewpoint (or that a classification based on lasciviousness targets a viewpoint). *Id*. at 282 (asking how, "for example, would one go about discussing and considering the political issues of the day from a lascivious viewpoint?").

The same considerations govern a classification based on "prurience." The word "prurient" operates in the SBA's regulation to describe the subject matter—or content—of businesses excluded from SBA loans. Businesses that present live performances are excluded if the *nature* of those performances is prurient. *See* 13 C.F.R. § 120.110(p). The restriction does not describe a viewpoint; one could not have a prurient view of American policy in the Middle East or antitrust regulation,

for example. Indeed, the Supreme Court has treated prurience as a content-based restriction, suggesting in dicta that "prurience and patent offensiveness are . . . permissible grounds on which to discriminate—and by implication, they do *not* constitute 'viewpoints.'" *Gen. Media*, 131 F.3d at 282 (discussing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1997)). We thus find that Pharaohs is unlikely to succeed in arguing that its exclusion from the Program violates its constitutional rights.

D. <u>Remaining Injunction Factors</u>

In the absence of the necessary "clear or substantial" showing of Pharaohs's likelihood of success on the merits, the district court properly exercised its discretion to deny preliminary relief. *Tom Doherty Assocs.*, 60 F.3d at 33. The court did not—and did not need to—address the remaining preliminary injunction factors. A district court may grant a mandatory injunction against the government "only if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial' likelihood of success on the merits." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 176–77 (2d Cir. 2020) (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006)). Thus, even if Pharaohs were able to carry its burden of showing that it would go out of

23

business without the injunction, its failure to show a clear or substantial likelihood of success on the merits stands in the way of any preliminary relief.

## III. CONCLUSION

For the reasons set forth above, the district court's judgment is affirmed.